IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

E.M. SERGEANT PULP & CHEMICAL    :   Civil Action No. 2:12-cv-1741 (KM) (MCA)
CO., INC. AND SERGEANT CHEMICAL    :   Hon. Kevin McNulty, U.S.D.J.
COMPANY,      :   Hon. Madeline Cox Arleo, U.S.M.J.
     :
        Plaintiffs,    :   Motion Return Date: September 2, 2014
     :
      v.    :       ORAL ARGUMENT REQUESTED
     :
THE TRAVELERS INDEMNITY    :
COMPANY INC. AND COLUMBIA    :       Document Electronically Filed
INSURANCE COMPANY,    :
     :
        Defendants.    :
     :

---

# BRIEF IN SUPPORT OF TRAVELERS
# MOTION FOR SUMMARY JUDGMENT

---

Stephen V. Gimigliano
John Maloney
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700
Attorneys for Defendant
The Travelers Indemnity Company

2099249.3

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS .............................................................................. 3

    I.    E.M. Sergeant's secondary "evidence" of the alleged
        Travelers policies............................................................................ 6

        A.    The Ledgers ......................................................................... 7

            1.    Ledger 529 ................................................................ 7

            2.    Ledger 554 ................................................................ 9

            3.    Ledger 560 ................................................................ 9

            4.    Ledger 1362 ............................................................ 10

        B.    The Fireman's Fund note ...................................................... 12

    II.    Travelers policy forms ................................................................. 13

ARGUMENT ............................................................................................... 15

    I.    Summary judgment is appropriate because, even if the facts are
        viewed in the light most favorable to plaintiff, E.M. Sergeant is not
        entitled to relief .......................................................................... 15

    II.    E.M. Sergeant cannot satisfy its burden of demonstrating the
        existence, terms and conditions of the alleged Travelers polices ........ 16

CONCLUSION ............................................................................................ 22

i

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>Page</u>

<u>Anderson v. Liberty Lobby, Inc.</u>,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)...............................16

<u>Armbruster v. Unisys Corp.</u>,
    32 F.3d 768 (3d Cir. 1994)...........................................................................15

<u>Borough of Sayreville v. Bellefonte Ins. Co.</u>,
    320 N.J. Super. 598 (App. Div. 1998) ..........................................................16

<u>Canal Ins. Co. v. Montello, Inc.</u>,
    2012 U.S. Dist. LEXIS 148119 (N.D. Okla. Oct. 15, 2012) .......................18

<u>Celotex Corp. v. Catrett</u>,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..............................15

<u>Coregis Ins. Co. v. City of Harrisburg</u>,
    401 F. Supp. 2d 398 (M.D. Pa. 2005) ..........................................................18

<u>Fletcher v. N.J. Dep't of Corr.</u>,
    2012 U.S. Dist. LEXIS 49385 (D.N.J. Apr. 9, 2012) ..................................15

<u>Global Landfill Agreement Grp. v. 280 Dev. Corp.</u>,
    992 F. Supp. 692 (D.N.J. 1998) ................................................................3 n.1

<u>Gray v. York Newspapers, Inc.</u>,
    957 F.2d 1070 (3d Cir. 1992).......................................................................15

<u>Kleenit, Inc. v. Sentry Ins. Co.</u>,
    486 F. Supp. 2d 121 (D. Mass. 2007) .....................................................17, 21

<u>Metlife Capital Corp. v. Westchester Fire Ins. Co.</u>,
    224 F. Supp. 2d 374 (D.P.R. 2002)..............................................................18

<u>Parker-Hannifin Corp. v. Am. Motorists Ins. Co.</u>,
    1990 U.S. Dist. LEXIS 20212 (D.N.J. July 24, 1990)............................16, 21

2111245.1

<u>Schoch v. First Fid. Bancorporation,</u>
    912 F.2d 654 (3d Cir. 1990)............................................................................. 16

<u>Todaro v. Bowman,</u>
    872 F.2d 43 (3d Cir. 1989).............................................................................. 15


<u>RULES</u>                                                           <u>Page</u>

Fed. R. Civ. P. 56(c) ................................................................................................ 15

2111245.1

Defendant The Travelers Indemnity Company ("Travelers") respectfully submits this brief in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

This is an insurance coverage action. Plaintiff E.M. Sergeant Pulp & Chemical Company, Inc. ("E.M. Sergeant") asserts claims for breach of contract and breach of the duty of good faith and fair dealing against Travelers arising from Travelers alleged failure to provide insurance coverage for certain environmental contamination claims. E.M. Sergeant alleges that Travelers issued policies to E.M. Sergeant that were in effect during certain periods in the 1940s, 1950s and 1960s and that may provide defense and/or indemnity for the underlying environmental claims.

The critical issue in this case is the existence, terms and conditions of these alleged Travelers policies. Despite numerous searches, neither E.M. Sergeant nor Travelers has been able to locate or confirm any portion of the alleged policies. All of E.M. Sergeant's employees from the relevant time period are deceased. E.M. Sergeant's former insurance broker is defunct and the broker's former employees and files cannot be located.

1

The few documents proffered by E.M. Sergeant to suggest that Travelers issued insurance policies consist of just a handful of historic ledger pages and a handwritten note from another insurer. But this "evidence" gets E.M. Sergeant nowhere and certainly does not permit E.M. Sergeant to satisfy its burden of demonstrating the existence, terms and conditions of the alleged Travelers policies. Indeed, the ledgers do not specify what types of policies may have been issued, what risks or locations may have been covered or even who is insured, as it is not even clear that the ledgers relate to E.M. Sergeant at all. The note is nothing more than inadmissible hearsay whose origin, author and context are all unknown. No doubt aware of these fatal shortcomings, E.M. Sergeant has candidly admitted that it does not have any information or documents referring or relating to the limits of liability, or the terms or conditions of the alleged Travelers policies. This admission merely confirms what discovery has revealed and requires that, as E.M. Sergeant cannot satisfy its burden of proof, summary judgment must be entered in favor of Travelers.

## STATEMENT OF FACTS

According to its Complaint, E.M. Sergeant alleges that Travelers issued policies to E.M. Sergeant and Sergeant Chemical Company[1] ("SCC") that were "effective from various dates, including but not limited to, 1943, 1945, 1946, 1947, 1948, 1949, 1950, and 1955 through 1964." (See Complaint, attached as Exhibit A to the Declaration of John Maloney ("Maloney Dec."), at ¶4). E.M. Sergeant also alleges that Columbia Insurance Company issued policies to E.M. Sergeant and SCC, many of which were purportedly in effect during the same periods as the alleged Travelers policies.[2] (Id. at ¶¶4, 25-34).

Through this action, E.M. Sergeant seeks insurance coverage under the alleged Travelers policies for property damage caused by environmental pollution arising from real property in Newark, New Jersey formerly owned by E.M. Sergeant (the "Site"). (Id.). E.M. Sergeant occupied the Site from approximately 1942 to 1984 and used it in connection with its business of distributing industrial chemicals and raw materials. (See E.M. Sergeant's responses to Travelers Second Set of Interrogatories, attached (along with

---

[1] SCC was a separate and distinct corporation that dissolved in 1981. Because SCC is a dissolved corporation, it lacks the capacity to sue Travelers under New Jersey law. See Global Landfill Agreement Grp. v. 280 Dev. Corp., 992 F. Supp. 692, 695-96 (D.N.J. 1998). Accordingly, SCC's claims were voluntarily dismissed.

[2] Defendant Columbia Insurance Company has not been located or served by E.M. Sergeant and thus is not a party to this matter at this time.

Travelers Second Set of Interrogatories) as Exhibit B to the Maloney Dec., at nos. 1 and 3). E.M. Sergeant asserts causes of action for breach of contract and breach of the duty of good faith and fair dealing against Travelers. (Complaint, Ex. A to the Maloney Dec., at ¶¶13-24).

All of the persons associated with E.M. Sergeant during the time of the alleged Travelers policies are now deceased. (See E.M. Sergeant's responses to Travelers Second Set of Interrogatories, Ex. B to the Maloney Dec., at no. 11; transcript of the deposition of Albert F. Reisch, Jr., November 15, 2012 ("A. Reisch dep."), attached as Exhibit C to the Maloney Dec., at 33:11-38:23). The broker allegedly responsible for E.M. Sergeant's insurance, William Stake & Company, is long defunct and E.M. Sergeant does not have any information as to the whereabouts of the broker's files or former employees. (See E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, attached (along with Travelers First Set of Requests for Admissions) as Exhibit D to the Maloney Dec., at nos. 39-40).

Discovery in this matter has confirmed that E.M. Sergeant cannot meet its burden of proof with respect to the existence, terms and conditions of the alleged Travelers policies. Despite numerous searches, neither E.M. Sergeant nor Travelers has been able to locate or confirm the alleged Travelers policies. Significantly, in its responses to Travelers Requests for Admissions, E.M. Sergeant

4

admits that *it does not have any information or documents referring or relating to the limits of liability or terms and conditions of any insurance policies allegedly issued by Travelers to E.M. Sergeant between 1943 and 1964.* (See E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at nos. 35-36).

During his deposition, E.M. Sergeant's executive vice president and corporate designee, Scott Reisch, confirmed that E.M. Sergeant has no information as to the policy limits, terms or conditions of any alleged Travelers policies. (See transcripts of deposition of Scott Reisch, November 15, 2012 and May 2, 2013 ("S. Reisch dep."), attached as Exhibit E to the Maloney Dec., at 63:8-16). E.M. Sergeant's counsel, Daniele Cervino, who was responsible for coordinating E.M. Sergeant's search for historical insurance information, also confirmed that E.M. Sergeant has no information as to either the types of coverage afforded by any alleged Travelers policies or the policy limits, terms or conditions of such alleged policies. (See transcript of deposition of Daniele Cervino, November 15, 2012 ("Cervino dep."), attached as Exhibit F to the Maloney Dec., at 9:3-7, 13:1-10, 39:22-24, 44:9-13). Indeed, both Mr. Reisch and Ms. Cervino further acknowledged that they do not even know if the alleged Travelers policies were primary policies. (S. Reisch dep., Ex. E to the Maloney Dec., at 63:2-7; Cervino dep., Ex. F to the Maloney Dec., at 44:14-18). In addition, E.M. Sergeant admits

5

that it does not have custody or control over any Primary Source Documents[3] that relate or refer to any alleged Travelers policies in effect during 1945, 1946 or 1955-62. (E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at nos. 8-17).

I.    E.M. Sergeant's secondary "evidence" of the alleged Travelers policies

In support of its allegation that Travelers issued policies to E.M. Sergeant, E.M. Sergeant relies on just two types of secondary "evidence": (1) a few pages from handwritten ledgers that purportedly reference payments to or refunds from Travelers in 1947-48, 1948-49, 1949-50 and 1963-64, and (2) a handwritten note from an unknown author allegedly obtained from the underwriting file of another insurer, Fireman's Fund Insurance Company ("Fireman's Fund"), which began issuing umbrella policies to E.M. Sergeant in 1964, that states "Travelers previously on line for about 40 years." (See ledger

---

[3] "Primary Source Documents" is defined as "any Documents maintained by E.M. Sergeant and/or SCC during the usual course of their business that relate to the business of one or both of these entities and which contemporaneously recorded the events or matters reflected therein." (See Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec.).

6

pages and Fireman's Fund underwriting note, attached as Exhibits G-K to the Maloney Dec.).[4]

## A.   The ledgers

E.M. Sergeant admits that the four ledger pages in its possession are the only Primary Source Documents of which it is aware that reference Travelers.[5] (See E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at no. 6; A. Reisch dep., Ex. C to the Maloney Dec., at 51:6-10, 56:21-57:1; S. Reisch dep., Ex. E to the Maloney Dec., at 44:10-16).

### 1.   Ledger 529

The first ledger page relied upon by E.M. Sergeant contains three separate debit entries that refer to Travelers:

(a)  November 24, 1948  --     Travelers #62095
                               W.C. 12/1/48-12/1/49

---

[4] Travelers does not concede the admissibility of any documents produced by E.M. Sergeant and specifically reserves its right to challenge admissibility on all available grounds.

[5] E.M. Sergeant's admission also references other pages from its document production that are either duplicates or do not reference Travelers at all and are therefore irrelevant.  (See E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at no. 6; documents production-stamped 000524, 000542, 000553, 000563, 000564 and 000566, attached as Exhibit L to the Maloney Dec.).  The four ledger pages relate exclusively to the periods from 1947 to 1950 and 1963 to 1964.

    (b) January 7, 1949    --    Travelers HP81724
    1/13/49-1/13/50 Tenants Liability

    (c) February 21, 1949    --    Travelers UB2458520
    12/1/47-12/1/48 Additional

(See ledger sheet production-stamped 000529 ("Ledger 529"), attached as Exhibit

G to the Maloney Dec.). The deposition testimony of E.M. Sergeant's president

(since 1975), Albert Reisch, and executive vice president (since the mid-1990s),

Scott Reisch, confirms that E.M. Sergeant has no information as to the meaning, if

any, of these entries. Significantly, Albert Reisch testified that he did not know

whether Ledger 529 related to E.M. Sergeant or SCC -- a wholly separate entity.

(A. Reisch dep., Ex. C to the Maloney Dec., at 45:11-17; S. Reisch dep., Ex. E to

the Maloney Dec., at 18:2-3). Albert Reisch and Scott Reisch both further testified

that (i) they did not know what type of insurance might have been afforded by any

of the "policies" purportedly referenced on Ledger 529, (A. Reisch dep., Ex. C to

the Maloney Dec., at 43:7-10, 45:5-10; S. Reisch dep., Ex. E to the Maloney Dec.,

at 32:13-16), (ii) they did not know what "W.C.," "Tenants Liability" or

"Additional" meant, though Scott Reisch believed that "W.C." stands for "Workers

Compensation," (A. Reisch dep., Ex. C to the Maloney Dec., at 42:23-25, 43:22-

24, 44:20-22; S. Reisch dep., Ex. E to the Maloney Dec., at 30:3-7, 31:1-4, 32:5-7),

and (iii) E.M. Sergeant was not a tenant at the Site. (A. Reisch dep., Ex. C to the

Maloney Dec., at 43:3-6; S. Reisch dep., Ex. E to the Maloney Dec., at 31:11-18).

2.     Ledger 554

The second ledger that references Travelers contains two relevant entries, both of which are under the column for credits:

    (a) May 13, 1964    --    Travelers Public Liability
                                                      KDS 1741699 4/6/64-4/1/65

    (b) June 11, 1964    --    Travelers 12389
                                                      KDS 822876 4/1/63-4/1/64

(See ledger sheet production-stamped 000554 ("Ledger 554"), attached as Exhibit H to the Maloney Dec.).  Again, E.M. Sergeant's representatives testified that these ledger entries could not be interpreted to provide any meaningful information about any alleged policies.  Specifically, Albert and Scott Reisch stated that (i) they have no understanding as to whether Ledger 554 relates to E.M. Sergeant or SCC (and there is no way to tell), (A. Reisch dep., Ex. C to the Maloney Dec., at 46:20-25); (ii) they do not know to what kind of insurance (if any) these ledger entries relate, (id. at 48:13-15; S. Reisch dep., Ex. E to the Maloney Dec., at 41:4-8), and (iii) they have no idea what "Public Liability" means.  (A. Reisch dep., Ex. C to the Maloney Dec., at 48:9-13).

3.     Ledger 560

The third ledger page relied upon by E.M. Sergeant contains a single entry that references Travelers:

2099249.3

> (a) August 30, 19[xx][6]    --    William Stake (Refund Travelers Ins.
> DS 179924 4/1/63
> Audit Mfrrs. Liability

(See ledger sheet production-stamped 000560 ("Ledger 560"), attached as Exhibit I to the Maloney Dec.). Just like the other ledger entries, E.M. Sergeant's principals testified that (i) they do not know to what kind of insurance (if any) these ledger entries might relate, (A. Reisch dep., Ex. C to the Maloney Dec., at 50:11-13), and (ii) they have no understanding as to what "Audit Manufacturers Liability" means, but confirmed that E.M. Sergeant did not manufacture anything. (Id. at 50:7-10, 14-16; S. Reisch dep., Ex. E to the Maloney Dec., at 40:12-41:3).[7] Daniele Cervino also testified that the reference to "Manufacturers" indicates that the insurance likely related to SCC and not to E.M. Sergeant. (Cervino dep., Ex. F to the Maloney Dec., at 32:20-24).

### 4. Ledger 1362

The fourth and final ledger page relied upon by E.M. Sergeant reflects four entries that reference Travelers, the first two of which are debits and the latter two of which are credits:

---

[6] It is not clear from Ledger 560 in what year it was purportedly created. (See Ledger 560, Ex. I to the Maloney Dec.).

[7] Unlike Ledgers 529 and 554, Ledger 560 appears to relate to E.M. Sergeant on its face because it bears a stamp across it that reads "E.M. Sergeant Pulp and Chemical Co., Inc." (See Ledger 560, Ex. I to the Maloney Dec.).

| | | |
|---|---|---|
| (a) April 16, 1949 | -- | 4/1/49-4/1/50 Travelers DS 330528 (Chlorine) |
| (b) September 22, 1949 | -- | 4/1/48-4/1/49 audit 79[illegible] Travelers DS 2646587 Chlorine |
| (c) January 6, 1949 | -- | Refund Travelers W.C. Policy NJUB2640541 Cancelled 10/9/48 |
| (d) August 25, 1950 | -- | 330528 Travelers 4/1/49-4/1/50 Refund |

(See ledger sheet production-stamped 001362 ("Ledger 1362"), attached as Exhibit J to the Maloney Dec.). Scott Reisch again testified that he (i) did not know if Ledger 1362 related to E.M. Sergeant or SCC, though he believed it belonged to SCC, (S. Reisch dep., Ex. E to the Maloney Dec., at 75:24-76:5), (ii) believed that the references to chlorine indicated "a form of insurance against a potential problem with chlorine . . . something very specific to do with that piece of the operation," (id. at 75:19-23, 82:13-16), and (iii) the third entry probably relates to a workers compensation policy. (Id. at 78:17-20). In addition, Daniele Cervino testified that the references to "chlorine" likely related to a "special risk policy stand-alone for [SCC's] chlorine operation" and did not relate to E.M. Sergeant. (Cervino dep., Ex. F to the Maloney Dec., at 32:11-24).

11

B.    The Fireman's Fund note

In addition to the four ledger pages, E.M. Sergeant also relies on a handwritten note purportedly obtained from Fireman's Fund that states "Travelers previously on line for about 40 years." (See Fireman's Fund underwriting note, Ex. K to the Maloney Dec.). E.M. Sergeant has taken no discovery with respect to the handwritten note, but has confirmed that it did not originate from E.M. Sergeant's files and was not maintained by E.M. Sergeant during the usual course of its business. (S. Reisch dep., Ex. E to the Maloney Dec., at 56:18-24; E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at no. 18). E.M. Sergeant therefore has no basis upon which the note may be admitted into evidence.

Moreover, E.M. Sergeant has admitted that it: (i) does not know the identity of the individual who drafted the note, (E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at no. 21), (ii) does not know the basis for the reference to "40 years," (S. Reisch dep., Ex. E to the Maloney Dec., at 57:25-58:3); (iii) does not know what is meant by "on line," (id. at 58:4-9), and (iv) does not know what type of insurance is potentially referenced by the note. (Id. at 58:18-23).[8] Despite this near total lack

---

[8] In addition, the Fireman's Fund employee most familiar with this matter has confirmed that she does not know who authored the note or when it was written. Moreover, she confirmed that she has no knowledge as to whether Travelers issued

2099249.3

of understanding of the source or meaning of the note, E.M. Sergeant acknowledges that the Fireman's Fund note is the sole basis upon which E.M. Sergeant alleges that Travelers issued an insurance policy to E.M. Sergeant for the years 1955-59. (E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at nos. 27-31). Indeed, given the absence of any Primary Source Documents relating to nearly all of the policy years alleged, the note appears to be the only basis for most of the Travelers policies alleged in E.M. Sergeant's Complaint. (See Complaint, Ex. A to the Maloney Dec.).

II.    Travelers policy forms

In light of the ledger entries described above, Travelers produced certain policy forms relating to policy prefixes HP, DS, KDS and UB that were in use during the periods of the alleged Travelers policies. (See Travelers policy forms, collectively attached as Exhibit N to the Maloney Dec.). Of these, the HP, DS and KDS policy forms are used in policies that potentially provide coverage for property damage and bodily injury and, in some instances, medical payments. (Id.). The UB policy form relates exclusively to workers compensation. (Id.).

---

any policies to E.M. Sergeant at any time. (See Affidavit of Jennifer Gilbert, attached as Exhibit M to the Maloney Dec.).

2099249.3

Travelers also produced Robert J. Harris, Second Vice President in Travelers Special Liability Coverage Unit, for deposition concerning the policy forms. Mr. Harris explained during his deposition that policy forms are like "building blocks" from which a policy is constructed. (See transcript of deposition of Robert J. Harris ("Harris dep."), attached as Exhibit O to the Maloney Dec., at 18:25-19:4). Using another analogy, Mr. Harris further explained that:

> the declarations page . . . functions like an a la carte menu. You have to specifically select the coverages and specifically select the subdivision of the coverages and specifically rate the hazards associated and assign policy limits to get a portion of the policy applicable. . . . What you get in the policy is dependent on which items from the menu you select. And you can select as few as one of them. And then [in] the second instance it depends on how the policy is endorsed.
>
> \*        \*        \*
>
> The form provides you [with] the options from which a specific policy is constructed by choosing the specific coverages and then appropriately endorsing them.

(Id. at 19:8-21, 20:1-4). However, without a copy of an actual declarations page and policy (such as here), it is impossible to know which items from the menu were selected, such as whether the policy provided coverage for property damage, which (if any) property damage options were selected, whether the policy was limited to certain premises and what endorsements may have been part of the policy. (Id. at 25:14-20, 28:2-5, 29:22-30:3, 35:5-11). Notably, "you can't reverse engineer and get to the declarations pages content. You just have to have the declarations page." (Id. at 39:12-15).

## ARGUMENT

I.  Summary judgment is appropriate because, even if the facts are viewed in the light most favorable to plaintiff, E.M. Sergeant is not entitled to relief

Summary judgment may be granted if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265, 278 (1986); Todaro v. Bowman, 872 F.2d 43, 46 (3d Cir. 1989).  Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The test under Fed. R. Civ. P. 56(c) is therefore "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law."  Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994) (quoting Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)).  Of course, the party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Fletcher v. N.J. Dep't of

15

Corr., 2012 U.S. Dist. LEXIS 49385, *4 (D.N.J. Apr. 9, 2012) (citing Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"[U]nsupported allegations . . . and pleadings are insufficient to repel summary

judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

As more fully discussed below, even if all inferences are viewed in

favor of E.M. Sergeant, Travelers is entitled to judgment as a matter of law

because E.M. Sergeant lacks any actual evidence that demonstrates the existence,

terms and conditions of any alleged insurance policies issued by Travelers.

Accordingly, summary judgment in Travelers favor should be entered.

II.     E.M. Sergeant cannot satisfy its burden of demonstrating the
        existence, terms and conditions of the alleged Travelers policies

Under New Jersey law, it is the alleged insured's burden to

demonstrate the existence, terms and conditions of an alleged missing insurance

policy. See Borough of Sayreville v. Bellefonte Ins. Co., 320 N.J. Super. 598, 599

(App. Div. 1998).  In Parker-Hannifin Corp. v. Am. Motorists Ins. Co., 1990 U.S.

Dist. LEXIS 20212 (D.N.J. July 24, 1990), the court granted summary judgment to

three insurers on the basis that the alleged insured, Industrial Microwave

Corporation ("IMC"), failed to establish the existence, terms and conditions of the

alleged policies.  In so ruling, the court relied on the fact that neither IMC's former

risk insurance manager nor its insurance agent had any specific recollection of the

16

alleged policies.  Id. at *3-4.  Although the insurance agent relied on ledger sheets that noted the issuance of a "portfolio policy," the ledger sheets were prepared by unidentified employees and contained limited information about the insurers, the general type of insurance, policy number and policy periods.  Id.  The court further noted that, because the "portfolio policy" does not indicate the specific type of coverage, "it is impossible to determine the risks against which those policies afforded protection."  Id. at *5.  Additionally, the agent had no record of any canceled premium checks relating to insurance policies issued to IMC by any of the alleged insurers.  Id. at *6.  Accordingly, the court granted summary judgment. Id. at *7.

Similarly, Kleenit, Inc. v. Sentry Ins. Co., 486 F. Supp. 2d 121 (D. Mass. 2007), involved alleged missing Travelers policies that the putative insured ("Kleenit") attempted to establish through secondary evidence, most notably historic ledgers.  As to the alleged 1964-67 policy, the court found that while the ledger entries showed that Kleenit made payments to its broker for "some sort of insurance, . . . the entries say nothing about the type of insurance involved, nor do they establish in any way the terms of the missing policy."  Id. at 127.  The court thus found that summary judgment was warranted because Kleenit failed to adduce sufficient evidence of the terms or existence of the alleged 1964-67 policy.  Id. With respect to the alleged 1967-70 policy, the court assumed (in favor of the

17

alleged insured) that ledger entries reflecting payments to Travelers and identifying policy numbers created a triable issue as to the existence of insurance policies.  Id. at 130.  However, "although the contents of the ledger sheets permit the inference that Kleenit purchased business owners insurance from Travelers, the ledger sheets say nothing about the specific materials terms of the policies, and Kleenit has produced no other evidence to establish the material terms."  Id.  Accordingly, the court granted summary judgment to Travelers with respect to the alleged 1967-70 policy as well.  Id.; see also Canal Ins. Co. v. Montello, Inc., 2012 U.S. Dist. LEXIS 148119 (N.D. Okla. Oct. 15, 2012) (finding that while putative insured "may be able to demonstrate the existence of the missing policies and even some of the coverage terms, [] the bulk of the conditions of coverage remain unknown and even unknowable," thus summary judgment was warranted); Coregis Ins. Co. v. City of Harrisburg, 401 F. Supp. 2d 398, 404 (M.D. Pa. 2005) (granting summary judgment where putative insured failed to adduce evidence that it purchased optional personal injury coverage, as it could not prove the terms and conditions of the missing policies); Metlife Capital Corp. v. Westchester Fire Ins. Co., 224 F. Supp. 2d 374, 386-387 (D.P.R. 2002) (even assuming arguendo that insured had established the existence of the missing policy through "certificates and the confirmation of insurance [that] outline the type of coverage, the dates of coverage, and coverage amounts," none of those documents specify or describe

18

any specific policy provisions and "[a]bsent proof of or reference to the specific language, the Court can make no determinations as to what duties [the insurer] may have owed [the putative insured] under the policy").

Here, E.M. Sergeant's "evidence" of the alleged Travelers policies falls well short of satisfying its burden of proof even as to the existence, much less the terms and conditions of any alleged Travelers insurance policies. Significantly, E.M. Sergeant admits that that it does not have *any* information or documents referring or relating to the limits of liability, terms or conditions of *any* insurance policies allegedly issued by Travelers to E.M. Sergeant between 1943 and 1964. (See E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at nos. 35-36). This dispositive admission alone should end the inquiry and be sufficient to grant summary judgment to Travelers.

A review of the documents relied upon by E.M. Sergeant only confirms that E.M. Sergeant cannot satisfy its burden. Even assuming *arguendo* that the ledgers produced by E.M. Sergeant refer to policies issued by Travelers, the ledger entries are not specific as to what types of policies are referenced and what coverages are afforded by these alleged policies. As explained by Mr. Harris, even those entries that reflect potential policy numbers with prefixes do not provide any information as to the insurance potentially provided. Indeed, HP, DS

and KDS policies could insure bodily injury only, or certain types of property damage only, or be limited to just certain insured premises. Without a copy of the policy, ascertaining the coverage provided would be pure speculation. Notably, the ledgers only reflect policy numbers with these prefixes for two years (1949 and 1964), leaving E.M. Sergeant with absolutely nothing to indicate even the existence of policies issued by Travelers in effect during the remaining alleged years.

Moreover, it is not apparent that the ledger entries referencing Travelers relate to E.M. Sergeant at all. In fact, just one of the ten ledger entries referencing Travelers (Ledger 560) also references E.M. Sergeant. E.M. Sergeant's witnesses have stated that they cannot identify whether the remaining entries relate to insurance for E.M. Sergeant or SCC. It is thus entirely conjectural as to whom the vast majority of these ledger pages relate.

Finally, the handwritten note (reportedly obtained from Fireman's Fund) also does nothing to assist E.M. Sergeant to meet its burden. As an initial matter, the note is inadmissible, as it is unclear (even to Fireman's Fund) who drafted it, for what purpose it was drafted, when it was drafted or how it was maintained. Moreover, E.M. Sergeant cannot authenticate this document, as it did not come from E.M. Sergeant's records. Beyond these fatal evidentiary shortcomings, the note does not specify what type of policies are referenced, to

whom they were issued, when the note was written, nor does it identify the source of the information.  This document is also inconsistent with E.M. Sergeant's Complaint, which alleges that Columbia Insurance Company also issued policies to E.M. Sergeant between 1948 and 1963.  The note is therefore nothing more than worthless and inconsistent hearsay that sheds no light on the existence, limits, terms or conditions of any alleged Travelers policies.

In light of the foregoing, E.M. Sergeant's "evidence" as to the alleged Travelers policies falls well short of even that which the Parker-Hannifin and Kleenit courts found insufficient.  See Parker-Hannifin, 1990 U.S. Dist. LEXIS 20212; Kleenit, 486 F. Supp. 2d 121.  E.M. Sergeant's "proofs" are thus inadequate for E.M. Sergeant to satisfy its burden as a matter of law.  Accordingly, Travelers respectfully submits that, viewing all evidence in the light most favorable to E.M. Sergeant, Travelers motion for summary judgment should be granted.

CONCLUSION

For the foregoing reasons, defendant The Travelers Indemnity Company respectfully requests that its motion for summary judgment be granted in its entirety.

Dated: June 16, 2014

/s/ John Maloney
John Maloney
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Attorneys for Defendant
The Travelers Indemnity Company

22

2099249.3