John Maloney
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700
Attorneys for Defendant
The Travelers Indemnity Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO., INC. AND SERGEANT CHEMICAL COMPANY, | : Civil Action No. 2:12-cv-1741 (KM) (MCA)<br>: Hon. Kevin McNulty, U.S.D.J.<br>: Hon. Madeline Cox Arleo, U.S.M.J.<br>: |
| Plaintiffs, | : |
| v. | :      DECLARATION OF<br>:      JOHN MALONEY |
| THE TRAVELERS INDEMNITY COMPANY INC. AND COLUMBIA INSURANCE COMPANY, | :<br>:<br>:    Document Electronically Filed |
| Defendants. | :<br>: |

JOHN MALONEY, of full age, hereby declares as follows:

1.     I am an attorney-at-law of the State of New Jersey and a shareholder of the law firm of Graham Curtin, P.A.  I represent defendant The Travelers Indemnity Company ("Travelers") in the above-captioned matter.

2.     I submit this declaration in support of Travelers motion for summary judgment pursuant to Fed. R. Civ. P. 56.

3.     Attached hereto as Exhibit A is a true and correct copy of plaintiff E.M. Sergeant Pulp & Chemical Company, Inc.'s ("E.M. Sergeant") Complaint in this matter.

2108935.1

4.      Attached hereto as Exhibit B is a true and correct copy of E.M. Sergeant's responses to Travelers Second Set of Interrogatories (as well as a copy of Travelers Second Set of Interrogatories to which they respond), which documents were served in connection with this matter.

5.      Attached hereto as Exhibit C is a true and correct copy of relevant portions of the transcript of the deposition of Albert F. Reisch, Jr., which took place in connection with this matter on November 15, 2012.

6.      Attached hereto as Exhibit D is a true and correct copy of E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions (as well as a copy of Travelers First Set of Requests for Admissions to which they respond), which documents were served in connection with this matter.

7.      Attached hereto as Exhibit E is a true and correct copy of relevant portions of transcripts of the deposition of Scott Reisch, which took place in connection with this matter on November 15, 2012 and May 2, 2013.

8.      Attached hereto as Exhibit F is a true and correct copy of relevant portions of the transcript of the deposition of Daniele Cervino, Esq., which took place in connection with this matter on November 15, 2012.

9.      Attached hereto as Exhibit G is a true and correct copy of a document bearing production-stamp 000529, which was produced by E.M. Sergeant in connection with this matter.

10.      Attached hereto as Exhibit H is a true and correct copy of a document bearing production-stamp 000554, which was produced by E.M. Sergeant in connection with this matter.

11.     Attached hereto as Exhibit I is a true and correct copy of a document bearing production-stamp 000560, which was produced by E.M. Sergeant in connection with this matter.

12.     Attached hereto as Exhibit J is a true and correct copy of a document bearing production-stamp 001362, which was produced by E.M. Sergeant in connection with this matter.

13.     Attached hereto as Exhibit K is a true and correct copy of a document bearing production-stamp 000702, which was produced by E.M. Sergeant in connection with this matter.

14.     Attached hereto as Exhibit L are true and correct copies of documents bearing production-stamps 000524, 000542, 000553, 000563, 000564 and 000566, which were produced by E.M. Sergeant in connection with this matter.

15.     Attached hereto as Exhibit M is a true and correct copy of an Affidavit of Jennifer Gilbert.

16.     Attached hereto as Exhibit N is a true and correct copy of relevant Travelers policy forms, which documents bear production-stamps TRAV 1396-1459 and were produced by Travelers in connection with this matter.[1]

17.     Attached hereto as Exhibit O is a true and correct copy of relevant portions of the transcript of the deposition of Robert J. Harris, which took place in connection with this matter on January 28, 2014.

---

[1] Exhibit N is filed under seal and is the subject of Travelers motion to seal pursuant to L. Civ. R. 5.3.

2108935.1

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


/s/      *John Maloney*
JOHN MALONEY

Dated:  June 16, 2013

# EXHIBIT A

JOSEPH A. FERRIERO, P.C.
50 Main Street, Suite 6
P.O. Box 157
Hackensack, New Jersey 07601
(201) 669-2929
*Attorney for Plaintiffs*

---

| | |
|---|---|
| E. M. SERGEANT PULP & CHEMICAL CO., INC. AND SERGEANT CHEMICAL COMPANY, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY DOCKET NO.: L-850-12 |
| Plaintiffs, | CIVIL ACTION |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND** |
| TRAVELERS INSURANCE COMPANY INC. AND COLUMBIA INSURANCE COMPANY. | |
| Defendants. | |



---

Plaintiffs E. M. SERGEANT PULP & CHEMICAL CO. INC. a New York Corporation and

SERGEANT CHEMICAL COMPANY INC., a New Jersey Corporation by and through their

counsel, file this action for Declaratory Judgment against the above-named defendants and states as

follows:

**The Parties**

1.      Plaintiff, E. M. SERGEANT PULP & CHEMICAL CO. INC., hereinafter

referred to as "E. M.", is a New York corporation, with its main office located at 9 Chelsea Road,

Clifton, New Jersey.

1

2.    Plaintiff, SERGEANT CHEMICAL COMPANY, hereinafter referred to as "SERGEANT", was a New Jersey corporation which was dissolved on September 4, 1981.

3.    Defendant, TRAVELERS INSURANCE COMPANY, hereinafter referred to as "TRAVELERS", is an insurance company with, upon information and belief, offices located at 6 Century Drive, Parsippany, New Jersey.  TRAVELERS has provided insurance to E.M. and SERGEANT.  The insurance policies at issue in this litigation was effective from various dates, including but not limited to, 1943, 1945, 1946, 1947, 1948, 1949, 1950, and 1955 through 1964.

4.    Defendant COLUMBIA INSURANCE COMPANY, hereinafter referred to as "COLUMBIA", is an insurance company that has provided insurance to Plaintiffs E. M. and SERGEANT.  However, Plaintiffs do not know the location of the principal offices of this company at this time.  The insurance policies at issue in this litigation were effective from various dates, including but not limited to, 1948 through 1952 and 1955 through 1963.

## Factual Background

5.    On or about February 4, 2009, E. M. was named as a Third Party Defendant by MAXUS ENERGY CORPORATION and TIERRA SOLUTIONS, INC. in a lawsuit in the Superior Court of New Jersey, Law Division, Essex County under Docket Number L-009868-05.

6.    The Third Party Complaint seeks damages under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. for alleged environmental discharges, and contribution and costs in connection with the initial action brought by the New Jersey Department of Environmental Protection and the Administrator of the New Jersey Spill Compensation Fund.

2

7.    Plaintiff has also previously received notices in September 2003 and May 2, 2005 from the United States Environmental Protection Agency that it is a Potential Responsible Party under 42 USCA 9601 et seq.

8.    Counsel for Plaintiffs notified Defendant TRAVELERS that a Third Party Complaint had been filed against Plaintiff and provided TRAVELERS with copy of same. Counsel further provided notice to TRAVELERS of the potential claims under 42 USCA 9601 et. seq.

9.    The occurrences allegedly occurred during the effective periods of the policies issued by TRAVELERS and/or constitute a claim based on continuous trigger.

10.    Defendant TRAVELERS denied coverage for both matters.

11.    Plaintiffs objected to Defendant's denial of coverage.

12.    The aforementioned law suit under Docket Number L-009868-05 has continued, as has Plaintiffs' exposure under 42 USCA 9601 et seq., and Defendant TRAVELERS has not provided coverage or a defense for these claims.

## COUNT I

### Breach of Contract against TRAVELERS

13.    Plaintiffs repeats the allegations contained in paragraphs 1 through 11 of the Complaint as if fully set forth at length herein.

14.    On or about numerous dates, including but not limited to, the years set forth herein, Plaintiffs and TRAVELERS entered into agreements to provide insurance coverage.

15.    Plaintiffs' insurance agreements with TRAVELERS were in effect during the claims alleged in the aforementioned litigation.

3

16.    Pursuant to the terms of Plaintiffs' policies, TRAVELERS was required to provide Plaintiffs with insurance coverage for the lawsuit and any future claims that may be made by the United States Environmental Protection Agency.

17.    TRAVELERS has refused to provide Plaintiffs with insurance coverage and to provide a defense for these claims.

18.    TRAVELERS is in breach of its insurance agreements with Plaintiffs.

19.    As a direct and proximate result of TRAVELERS' breach, Plaintiffs have been damaged and will continue to suffer damages until TRAVELERS provides the insurance coverage and a defense of all claims as required by the terms of the parties' agreements.

WHEREFORE, Plaintiffs demand that judgment be entered in this favor against TRAVELERS for compensatory damages, with pre-judgment interest, costs, attorneys' fees and such other relief as the Court deems just and proper.

## SECOND COUNT

### Breach of Duty of Good Faith and Fair Dealing against TRAVELERS

20.    Plaintiffs repeat the allegations in paragraph 1 through 18 of the Complaint as if fully set forth at length.

21.    Every contract in New Jersey contains an implied duty of good faith and fair dealing, which calls for the parties to a contract to refrain from doing anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract.

22.    TRAVELERS had an obligation to deal in good faith with Plaintiffs pursuant to its agreement to provide insurance coverage to Plaintiffs.

4

23.    TRAVELERS breached the duty of good faith and fair dealing by refusing to provide insurance coverage to Plaintiffs for the litigation and potential environmental claims under 42 USCA 9601 et seq.

24.    As a direct and proximate result of TRAVELERS' breach of the duty of good faith and fair dealing, Plaintiffs have suffered damages and will continue to do so until TRAVELERS provides the insurance coverage required by the terms of the parties' agreement.

WHEREFORE, Plaintiffs demand that judgment be entered in its favor against TRAVELERS for compensatory and punitive damages, with pre-judgment interest, costs, attorneys' fees and such other relief as the Court deems just and proper.

## COUNT III

### Breach of Contract against COLUMBIA

25.    Plaintiffs repeat the allegations in paragraph 1 through 23 of the Complaint as if set forth at length herein.

26.    On or about 1948, COLUMBIA and Plaintiffs entered into Insurance Agreements.

27.    COLUMBIA has breached the Insurance Agreements by failing to provide coverage to Plaintiffs for the claims alleged against Plaintiffs.

28.    COLUMBIA has failed to comply with the terms and conditions of Plaintiffs' policies with COLUMBIA.

29.    As a direct and proximate result of COLUMBIA's breaches of the Insurance Agreements, Plaintiffs have been damaged, and will continue to suffer damages until COLUMBIA provides the insurance coverage required by the terms of the parties' agreement.

5

WHEREFORE, Plaintiffs demand that judgment be entered in its favor against COLUMBIA for compensatory damages, with pre-judgment interest, costs, attorneys' fees and such other relief as the Court deems just and proper.

<u>COUNT IV</u>

<u>Breach of Duty of Good Faith and Fair Dealing Against COLUMBIA</u>

30.    Plaintiffs repeat the allegations in paragraphs 1 through 28 of the Complaint as if set forth at length herein.

31.    Every contract in New Jersey contains an implied duty of good faith and fair dealing, which calls for the parties to a contract to refrain from doing anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract.

32.    COLUMBIA had an obligation to deal in good faith with Plaintiffs pursuant to its agreements to provide insurance coverage to Plaintiffs.

33.    COLUMBIA breached the duty of good faith and fair dealing by refusing to provide insurance coverage to Plaintiffs for the aforementioned litigation and for the potential environmental claims under 42 <u>USCA</u> 9601 et seq.

34.    As a direct and proximate result of COLUMBIA's breach of the duty of good faith and fair dealing, Plaintiffs have suffered damages and will continue to do so until COLUMBIA provides the insurance coverage required by the terms of the parties' agreements.

WHEREFORE, Plaintiffs demand that judgment be entered in its favor against COLUMBIA for compensatory and punitive damages, with pre-judgment interest, costs, attorneys' fees and such other relief as the Court deems equitable and just.

LAW OFFICES OF JOSEPH A. FERRIERO
Attorneys for Plaintiff

January 18, 2012    By: _____
Joseph A. Ferriero, Esq.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable herein.

LAW OFFICES OF JOSEPH A. FERRIERO
Attorneys for Plaintiffs

January 18, 2012    By: _____
Joseph A. Ferriero, Esq.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Joseph A. Ferriero, Esq. is hereby designated as trial counsel of this matter.

LAW OFFICES OF JOSEPH A. FERRIERO
Attorneys for Plaintiffs

January 18, 2012    By: _____
Joseph A. Ferriero, Esq.

## CERTIFICATION

I hereby certify pursuant to Rule 4:5-1 that the matter in controversy is not the subject of a any other Complaint pending in any Court or of a pending arbitration proceeding. No such Complaint or arbitration proceeding is contemplated.

LAW OFFICES OF JOSEPH A. FERRIERO
Attorneys for Plaintiffs

By: _____
        Joseph A. Ferriero, Esq.

Dated: January 18, 2012

Appendix XII-B1

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for Initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY | |
|---|---|
| PAYMENT TYPE: ☐CK ☐CG ☐CA | |
| CHG/CK NO. | |
| AMOUNT: | |
| OVERPAYMENT: | |
| BATCH NUMBER: | |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| JOSEPH A. FERRIERO | (201) 669-2929 | Bergen |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| LAW OFFICES OF JOSEPH A. FERRIERO P. C. | L-850-12 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 50 MAIN STREET SUITE 6 P. O. BOX 157 HACKENSACK, NEW JERSEY 07602-0157 | COMPLAINT |
| | JURY DEMAND ■ YES ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO INC & SERGEANT CHEMICAL COMPANY INC | EM SERGEANT PULP & CHEMICAL & SERGEANT CHEMICAL CO V. TRAVELERS INSURANCE COMPANY & COLUMBIA INSURANCE COMPANY |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO |
|---|---|
| 505 | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? ☐ YES ■ NO | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ Yes ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) TRAVELERS INSURANCE COMPANY ☐ NONE ☐ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ■ Yes ☐ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) ☐ FAMILIAL ■ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ YES ☐ No | |
|---|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION
Case needs to be accelerated since it is an insurance claim and Plaintiffs need coverage to defend a suit and an environmental claim by EPA

RECEIVED
JAN 1 8 2012
SUPERIOR COURT OF NEW JERSEY
COUNTY OF BERGEN
FINANCE DIVISION

| ☐ DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ Yes ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED? ☐ Yes ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

Effective 08/20/2011, CN 10517-English                                                                page 1 of 2



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
### Use for initial pleadings (not motions) under *Rule 4:5-1*

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151   NAME CHANGE
- 175   FORFEITURE
- 302   TENANCY
- 399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502   BOOK ACCOUNT (debt collection matters only)
- 505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506   PIP COVERAGE
- 510   UM or UIM CLAIM (coverage issues only)
- 511   ACTION ON NEGOTIABLE INSTRUMENT
- 512   LEMON LAW
- 801   SUMMARY ACTION
- 802   OPEN PUBLIC RECORDS ACT (summary action)
- 999   OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305   CONSTRUCTION
- 509   EMPLOYMENT (other than CEPA or LAD)
- 599   CONTRACT/COMMERCIAL TRANSACTION
- 603N   AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y   AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605   PERSONAL INJURY
- 610   AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621   UM or UIM CLAIM (includes bodily injury)
- 699   TORT – OTHER

**Track III - 450 days' discovery**
- 005   CIVIL RIGHTS
- 301   CONDEMNATION
- 602   ASSAULT AND BATTERY
- 604   MEDICAL MALPRACTICE
- 606   PRODUCT LIABILITY
- 607   PROFESSIONAL MALPRACTICE
- 608   TOXIC TORT
- 609   DEFAMATION
- 616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617   INVERSE CONDEMNATION
- 618   LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303   MT. LAUREL
- 508   COMPLEX COMMERCIAL
- 513   COMPLEX CONSTRUCTION
- 514   INSURANCE FRAUD
- 620   FALSE CLAIMS ACT
- 701   ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
- 280   ZELNORM
- 285   STRYKER TRIDENT HIP IMPLANTS
- 288   PRUDENTIAL TORT LITIGATION
- 289   REGLAN

- 290   POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291   PELVIC MESH/GYNECARE
- 292   PELVIC MESH/BARD
- 293   DEPUY ASR HIP IMPLANT LITIGATION

**Mass Tort (Track IV)**
- 248   CIBA GEIGY
- 266   HORMONE REPLACEMENT THERAPY (HRT)
- 271   ACCUTANE/ISOTRETINOIN
- 274   RISPERDAL/SEROQUEL/ZYPREXA
- 278   ZOMETA/AREDIA
- 279   GADOLINIUM

- 281   BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282   FOSAMAX
- 284   NUVARING
- 286   LEVAQUIN
- 287   YAZ/YASMIN/OCELLA
- 601   ASBESTOS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category**   ☐ Putative Class Action   ☐ Title 59

**Sara Lea**

| | |
|---|---|
| **From:** | Delgado,Wilma <WDELGAD1@travelers.com> |
| **Sent:** | Tuesday, February 21, 2012 2:51 PM |
| **To:** | TravelersSOP |
| **Cc:** | Service-of-Process-Coordinator |
| **Subject:** | FW: Summons |
| **Attachments:** | 20120221191244.pdf |

CSC upload please - SLG

-----Original Message-----
From: Brooks,Sharon T
Sent: Tuesday, February 21, 2012 2:49 PM
To: Delgado,Wilma
Subject: FW: Summons

CSC upload please - SLG

-----Original Message-----
From: Correia,Sandra
Sent: Tuesday, February 21, 2012 2:20 PM
To: Brooks,Sharon T
Subject: Summons .

Hello Sharon:

Attached is a scanned copy of the summons that was just hand delivered.
Originals will be sent overnight to your attention.

Should you have any additional questions please call.

Thank you,

Sandra Correia
Sr. Account Manager
Luxury Yacht & Ocean Marine

-----Original Message-----
From: scorreia [mailto:SCORREIA@travelers.com]
Sent: Tuesday, February 21, 2012 2:16 PM
To: Correia,Sandra
Subject:

GlobalScan document sent from scorreia.

=================================================================
This communication, including attachments, is confidential, may be subject to legal privileges, and is intended for the sole use of the addressee. Any use, duplication, disclosure or dissemination of this communication, other than by the addressee, is prohibited. If you have received this communication in error, please notify the sender immediately and delete or destroy this communication and all copies.

1



CORPORATION SERVICE COMPANY'

# Notice of Service of Process

**SLM / ALL**
**Transmittal Number: 9629406**
**Date Processed: 02/22/2012**

| Primary Contact: | Pamela Hoff<br>The Travelers Companies, Inc.<br>385 Washington Street,  MC 515A<br>Saint Paul, MN 55102 |
|---|---|

| | |
|---|---|
| **Entity:** | The Travelers Indemnity Company<br>Entity ID Number  2317465 |
| **Entity Served:** | Travelers |
| **Title of Action:** | E. M. Sergeant Pulp & Chemical Co., Inc. vs. Travelers Insurance Company Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Bergen County Superior Court, New Jersey |
| **Case/Reference No:** | L-850-12 |
| **Jurisdiction Served:** | New Jersey |
| **Date Served on CSC:** | 02/21/2012 |
| **Answer or Appearance Due:** | 35 Days |
| **Originally Served On:** | Travelers on 02/21/2012 |
| **How Served:** | Client Direct |
| Sender Information: | Joseph A. Ferriero<br>201-669-2929 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

| Attorney(s) | Joseph A. Ferriero |
|---|---|
| Office Address | 50 Main Street Suite 6 |

Town, State, Zip Code   Hackensack, NJ 07601

Telephone Number   (201) 669-2929

Attorney(s) for Plaintiff

E.M. Sergeant Pulp & Chemical Co., Inc. and Sergeant

Chemical Company

Plaintiff(s)

Vs.

Travelers Insurance Company Inc. and Columbia Insurance

Company

Defendant(s)

## Superior Court of New Jersey

| Bergen | COUNTY |
|---|---|
| Law | DIVISION |

Docket No: L-850-12

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

   The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

   If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

   If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

*Jennifer M. Perez /s/*

Jennifer M. Perez,
Clerk of the Superior Court

DATED:   2/14/12

Name of Defendant to Be Served:   Travelers Insurance Company Inc.

Address of Defendant to Be Served:   6 Century Drive, Parsippany, NJ

NOTE: The Case Information Statement is available at www.njcourts.com.

Revised 11/14/2011, CN 10792-English (Appendix XII-A)                    Page 1 of 4

## Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(800) 496-4570

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

Revised 11/14/2011, CN 10792-English (Appendix XII-A)
Directory of Superior Court Deputy Clerk's Offices / County Lawyer Referral and Legal Services
Revised 11/2010, CN 10153-English

Page 3 of 4

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(908) 475-2010

Revised 11/14/2011, CN 10792-English (Appendix XII-A)
Directory of Superior Court Deputy Clerk's Offices / County Lawyer Referral and Legal Services
Revised 11/2010, CN 10153-English

Page 4 of 4

**EXHIBIT B**

JOSEPH A. FERRIERO, P.C.
50 Main Street, Suite 6
P.O. Box 157
Hackensack, New Jersey 07601
(201) 669-2929
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
### For the
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO. INC. AND SERGEANT CHEMICAL COMPANY, | INDEX NO: 2:12-CV-1741 (ESH)(PS) |
| Plaintiffs, | CIVIL ACTION |
| v. | PLAINTIFF'S ANSWERS TO THE SECOND SET OF INTERROGATORIES FROM THE TRAVELERS INDEMNITY COMPANY |
| TRAVELERS INSURANCE COMPANY INC. AND COLUMBIA INSURANCE COMPANY, | |
| Defendants. | |

Plaintiff E.M. SERGEANT PULP & CHEMICAL CO. INC (hereinafter "Plaintiff" or "E.M. Sergeant") responds to the Second Set of Interrogatories propounded on Plaintiff as follows:

## INTERROGATORIES

1. E.M. Sergeant distributed industrial chemicals, intermediates and raw materials on a wholesale basis, including nutritional, neutraceuticals, pharmaceuticals and adjuvants. Sergeant Chemical Company (hereinafter "SCC") distributed chlorine. See Documents previously supplied with Plaintiff's First Set of Interrogatories and Document Production;

1

Description of operations in FFIC underwriting file bate stamped 000018-000019 and 001288-001294; Certificate of formation bate stamped 000654-000658.

2. Albert Reisch, Jr and Scott Reisch.

3. SCC leased the property from E.M. Sergeant from approximately March 17, 1943 to December 30, 1980, upon its dissolution. E.M. Sergeant occupied the property for generally the same term of 1942 to 1984. E.M. Sergeant's ownership of the property ended in April 1984. See Documents attached: Contract of Sale between E.M. Sergeant and Diamond Shamrock Chemicals Company dated March 13, 1984 bate stamped 001320-001325, Lease dated March 17, 1943 between E.M. Sergeant and SCC bate stamped 001333-001335, and SCC dissolution documents bate stamped 001328-001332; See Documents previously supplied with Plaintiff's First Set of Interrogatories and Document Production; Certificate of formation and dissolution of SCC bate stamped 000659-000668.

4. Please see response and documents indicated in the answer to Interrogatory #3 above.

5. E.M. Sergeant is not aware of any contamination of the Raritan River associated with its operations.

6. SCC handled chlorine to the extent that it repacked chlorine from tankers supplied by Diamond Alkali (Shamrock), which was located adjacent to SCC in Newark, New Jersey. The material was supplied to SCC in rail cars and repacked into 150 lb. cylinders.
SCC sold Flake Caustic Soda (sodium hydroxide) in 400 lb. drums, which were unopened from the original manufacturer, to various members of the New Jersey textile and color industries. Some of the original manufacturers SCC worked with included Diamond Alkali, Hooker and PPG. Standard Material Safety Data Sheets to be supplied.

E.M. Sergeant distributed chemicals in the same containers supplied by manufacturers. No Material Safety Data Sheets are available for E.M. Sergeant.

7.  E.M. Sergeant has no knowledge of discharges.   See Passaic Valley Sewerage Commission documents bate stamped Travelers 0987-0991; See Documents previously supplied with Plaintiff's First Set of Interrogatories and Document Production; Description of discharges bate stamped 001288-001294.

8.  E.M. Sergeant had no expectation of impact of release on the site.

9.  Regarding E.M. Sergeant's liabilities, (a) please see Plaintiff's Answers to the First Set of Interrogatories.   See Documents previously supplied with Plaintiff's First Set of Interrogatories and Document Production bate stamped 000339-000514.   (b) Indemnity costs not yet incurred.

10. E.M. Sergeant does not have an estimate of future liabilities at this time.

11. The following are persons identified by Albert Reisch, Jr. believed to have been employed by E.M. Sergeant during the late 1950s to early 1960s in New York.   These names are based on recollection alone and it is believed that all are deceased.

    Albert Reisch, Sr., Managing Director

    George Poland, Managing Director

    Rudolph Aberly, Managing Director

    Albert Johnson, Office Staff

    Marie Halsted, Secretary

    Mr. Murphy, Bookkeeper

12. The following are persons identified by Albert Reisch, Jr. believed to have been employed by SCC during the late 1950s to early 1960s in Newark, New Jersey.   These names are

3

based on recollection alone and it is believed that all are deceased

Adam Sudo, Foreman

Charles Moody, Staff, Chlorine Department

William Edmonds, Warehouse Employee/Forklift Operator

15. E.M. Sergeant is identifying Mark Laska of Great Eastern Ecology as a potential expert witness. See Documents previously supplied with Plaintiff's First Set of Interrogatories and Document Production: Report on the nature of damages alleged by the government bate stamped 000076-000090.

## CERTIFICATION

I hereby certify that the statements made in response to the foregoing interrogatories are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

E.M. SERGEANT PULP & CHEMICAL
COMPANY, INC.

By: _____

Title: _____

Date: _____

John Maloney
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700
Attorneys for Defendant
The Travelers Indemnity Company

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO., INC. AND SERGEANT CHEMICAL COMPANY, | : Civil Action No. 2:12-cv-1741 (FSH) (PS)<br>: Hon. Faith S. Hochberg, U.S.D.J.<br>: Hon. Patty Shwartz, U.S.M.J. |
| Plaintiffs, | : |
| v. | : TRAVELERS SECOND SET OF<br>: INTERROGATORIES TO PLAINTIFF<br>E.M. SERGEANT PULP & CHEMICAL CO. |
| THE TRAVELERS INDEMNITY COMPANY and COLUMBIA INSURANCE COMPANY, | : |
| Defendants. | : |

TO:    Joseph A. Ferriero, Esq.
Joseph A. Ferriero, P.C.
50 Main Street, Suite 6
Hackensack, New Jersey  07601

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Pretrial

Scheduling Order entered in this matter, defendant The Travelers Indemnity Company

("Travelers") submits to plaintiff E.M. Sergeant Pulp & Chemical Company ("Plaintiff" or

"Sergeant") the following interrogatories.  Plaintiff is required to answer each interrogatory

separately and fully in writing, under oath, and to serve a copy of its answers within thirty (30)

days from service hereof. The interrogatories shall be read and interpreted in accordance with the definitions and instructions set forth below.

Dated: December 20, 2012

/s/ John Maloney
John Maloney
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Attorneys for Defendant
The Travelers Indemnity Company
(incorrectly sued as Travelers Insurance
Company Inc.)

## INSTRUCTIONS

The following general instructions apply to each of the Interrogatories set forth herein:

1. The instructions are an integral part of these Interrogatories.

2. These Interrogatories contain a list of definitions of certain frequently used terms. It is essential that you refer to and utilize the definitions of all defined terms in the course of answering the Interrogatories.

3. These Interrogatories seek all information and documents available to you or in your possession, custody or control from any source, wherever situated, including but not limited to information from any files, records, documents, employees, former employees, officers, former officers, directors, former directors, agents, former agents, counsel and former counsel.

4. For each document whose production is requested, produce the entire original document, along with all attachments, appendices, and exhibits, and any copies that are not identical to the original (whether because of notes made on, or attached to, such copy or otherwise).

5. Travelers does not seek the disclosure of privileged information or documents. With respect to any document or information that you withhold on a claim of confidentiality or privilege, including the attorney-client privilege and the work-product doctrine, furnish a log of such documents or information providing at least the following: the nature,

subject matter, date, title, author, and addressees of the documents or information, the identity of all recipients of the document or information or copies thereof, and the asserted basis for withholding the document or information.

6.      If any part of the information furnished in answer to any Interrogatory is not within the personal knowledge of the person answering these Interrogatories, identify each person to whom such information is a matter of personal knowledge and each person who communicated to the person answering these Interrogatories any part of that information.

7.      If you do not answer any Interrogatory or subpart thereof on the basis of any claim of privilege, state the privilege asserted or claimed, and the facts upon which you rely to support the claim of privilege.

8.      For each Interrogatory, a complete response is required to each part or portion with the same effect as if such part or portion were propounded as a separate Interrogatory. If you object to any Interrogatory, the objection should clearly state to which part or portion of the Interrogatory it is directed.

9.      If, in answering any of these Interrogatories, you claim any ambiguity in interpreting an Interrogatory or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, but you should set forth as part of the response the language that you claim is ambiguous and the interpretation chosen or used in responding to the Interrogatory.

10.      Whenever a date, amount or other computation or figure is requested, the exact date, the amount or other computation or figure is to be given unless it is not known. If it is not known, then the approximate date, amount or other computation or figure should be given or the best estimate thereof, and the answer shall state that the date, amount computation or figure is an estimate or approximation.

11.      When used herein the words "and" and "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the Interrogatory all responses which might otherwise be construed to be outside its scope. "Each" shall be construed to include the word "every" and "every" shall be construed to include the word "each." "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any." The use of the term "including" shall be construed to mean "without limitation."

12.      References to the singular shall include the plural and references to the plural shall include the singular. References to the masculine gender include the feminine gender.

13.      The use of a verb in any tense shall be construed as the use of the verb in the past or present tense, as necessary to bring within the scope of the Interrogatory all responses which might otherwise be construed to be outside its scope.

14.     Annex hereto any documents that you identify in your response to each Interrogatory.

15.     These Interrogatories shall be deemed continuing so that supplemental answers shall be provided as soon as additional responsive information and documents become available.

<u>DEFINITIONS</u>

As used herein:

A.     "Action" means Civil Action No. 2:12-cv-1741 in the United States District Court for the District of New Jersey.

B.     "Address" means the present or last known street name and number, city or town, state and zip code.

C.     "And" and "or" shall be defined to include both "and " and "or" and shall always be read to require the more inclusive answer.

D.     "Any" means "all" and vice versa.

E.     "Claim(s)" or "Underlying Claim(s)" means any and all property damage or bodily injury claims or demands for money or services arising from Sergeant's historical products and/or operations for which Plaintiff seeks insurance coverage from Travelers in the within Action, including the third party complaint filed by Maxus Energy Corporation and Tierra Solutions, Inc. against Sergeant in the Superior Court of New Jersey, Law Division, Essex County, docket no. ESX-L-9868-05.

F.     "Communication" means any oral or written transmission of information between persons, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, electronic mail, telecopies, telexes, conferences or seminars.

G.     "Complaint" means the complaint filed on behalf of Plaintiff in this Action and any subsequent pleading(s) filed by Plaintiff, against Travelers.

H.     "Concerning," "relate," "relating to" or "regarding" mean consisting of, referring to, reflecting, concerning or having logical or factual connection with the matter discussed.

I.     "Document" or "documents" means, by way of illustration and not by way of limitation, the following items, whether printed or recorded or reproduced by any other mechanical process, written, produced by hand or produced by or stored in a computer, regardless of origin or location: books, records, communications, reports, correspondence, letters, electronic mail, data, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, applications, booklets, brochures, catalogues, circulars, magazines, pamphlets, periodicals, bulletins,

instructions, minutes, other communications (including but not limited to, inter- and intra-office communications), purchase orders, bills of lading, bid tabulations, questionnaires, surveys, contracts, agreements, options to purchase, memoranda of agreements, assignments, licenses, books of account, orders, invoices, statements, bills, checks, vouchers, ledger sheets, accounts, journals, cancelled checks, bank statements, bank passbooks, confirmations, statements of accounts, analyses, diaries, graphs, notebooks, charts, tables, maps, sketches, chains of custody, time sheets, manifests, working papers, plans, indices, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of accountants or consultants, data sheets, data processing cards, photographs, photographic negatives, phono-records, tape recordings, discs, wire recordings, transcripts of recordings, drawings, motion picture film, advertisements, press releases, drafts, and marginal comments appearing on any such documents, all other written or printed matter of any kind, or any other and all other data compilations from which information can be obtained and translated if necessary.

J.      "Identify," when used in reference to:
  (1)      a natural person, means the following information be provided:
    (a)      full name;
    (b)      home address;
    (c)      business address; and
    (d)      present or last known position, business affiliation, and job title or description.

  (2)      a company, corporation, association, partnership, or any legal entity other than a natural person means the following information be provided:
    (a)      its full name;
    (b)      a description of the type of organization or entity;
    (c)      the address of its principal place of business;
    (d)      the jurisdiction of its incorporation or organization; and
    (e)      the date of its incorporation or organization.

  (3)      a document means the following information be provided:
    (a)      its description (for example, letter, memorandum, report, etc.);
    (b)      its title;
    (c)      its date;
    (d)      the number of pages thereof;
    (e)      its subject matter;
    (f)      the identity of its author, signer, and any person who participated in its preparation;
    (g)      the identity of its addressee or recipient;
    (h)      the identity of each person to whom copies were sent and each person by whom copies were received;
    (i)      its present location; and

(j)    the identity of its custodian. (If any such document was, but is no longer, in your possession or subject to your control, state what disposition was made of it and when).

(4)    an oral communication means the following information be provided:

(a)    the date and time when it occurred;

(b)    the place where it occurred;

(c)    the complete substance of the communication;

(d)    the identity of each person:

    (1)    to whom such communication was made;

    (2)    by whom such communication was made; and

    (3)    who was present when such communication was made.

(e)    if by telephone:

    (1)    the identity of each person:

        (A)    who made each phone call;

        (B)    who participated in each call;

    (2)    the place where each person participating in each call was located;

(f)    the identity of all documents memorializing, referring or relating in any way to the subject matter of the communication.

K.    "Person" or "persons" means a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

L.    "SCC" means Sergeant Chemical Company together with its predecessors, and its past and present parents, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

M.    "Site" means the real property formerly owned by E.M. Sergeant and commonly referred to as 120 Lister Avenue, Newark, New Jersey, including any adjacent surface waters.

N.    "Travelers" means Defendant The Travelers Indemnity Company together with its predecessors, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

O.    "You," "your," "Plaintiff" or "E.M. Sergeant" means Plaintiff E.M. Sergeant Pulp & Chemical Company together with its predecessors, and its past and present parents, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

## INTERROGATORIES

1.    Describe in detail the history and nature of both E.M. Sergeant's and SCC's work, operations and/or activities at the Site, including relevant dates, and attach all documents which refer or relate to your response to this Interrogatory.

RESPONSE:


2.    Identify all persons employed by E.M. Sergeant and/or SCC who have knowledge of the operations and/or activities at the Site from 1942 to the present.

RESPONSE:


3.    Describe in detail and with specificity the facts concerning E.M. Sergeant's ownership, operation of or other nexus with the Site, including but not limited to: the date on which your ownership of the Site began; the name of entity(ies) to whom you leased the Site; the date on which you and each of your tenants began operations at the Site; the date, if any, on which you and each tenant ceased operations at the Site; and the date on which your ownership of the Site ended.

RESPONSE:


4.    Describe in detail and with specificity the facts concerning SCC's tenancy, operation of or other nexus with the Site, including but not limited to: the date on which SCC's leasehold at the Site began; the name of entity(ies) from whom SCC leased all or any portion of the Site; the date on which SCC began operations at the Site; the date on which SCC ceased operations at the Site; and the date on which SCC's lease of the Site ended.

RESPONSE:

5.    Describe in detail and with specificity the circumstances, including when, how and from whom, you first became aware of any alleged contamination of the Raritan River and/or the Site, as well as when, how and from whom, you first became aware any person sought contribution from E.M. Sergeant for such alleged contamination.

RESPONSE:

6.    Identify all types, categories and classes of solvents, solutions, chemicals or other substances handled, processed, treated and/or discharged at or from the Site (e.g., industrial, commercial, hazardous, non-hazardous, etc.) and attach all documents, including Material Safety Data Sheets, relating to each such substance.

RESPONSE:

7.    Identify all releases of waste at the Site, including but not limited to any and all discharges of solutions of caustic soda, chlorine and water and any and all "alleged environmental discharges" referenced in the Complaint.  For each release, identify all persons employed by E.M. Sergeant and/or SCC who have knowledge of such release and identify all communications and/or documents referring or relating to any such release.

RESPONSE:

8.    For each release identified in the previous Interrogatory, set forth E.M. Sergeant's reasonable expectation at the time of such release as to how soil, groundwater and/or surface water would be impacted.

RESPONSE:

9.     Set forth in detail and with specificity E.M. Sergeant's current total liabilities for which you seek recovery related to the Underlying Claim(s) and provide a breakdown of such liabilities by (a) defense costs and (b) indemnity payments.

RESPONSE:

10.     State whether E.M. Sergeant has estimated its future liabilities, if any, in connection with Underlying Claim(s) and, if so, set forth in detail and with specificity your estimation and/or projection, including a breakdown of such estimated and/or projected liabilities by (a) defense costs and (b) indemnity payments.

RESPONSE:

11.     Identify all persons employed by E.M. Sergeant between 1943 and 1964 and provide last known addresses for each or, if deceased, so state.

RESPONSE:

12.     Identify all persons employed by SCC between 1943 and 1964 and provide last known addresses for each or, if deceased, so state.

RESPONSE:

13.     State the names, addresses and areas of expertise of any and all proposed expert witnesses.  Set forth in detail the qualifications of each expert named and attach a copy of each expert's current resume.  Also attach true copies of all written reports provided to you by any such proposed expert witnesses.

(a)     State the subject matter on which your experts are expected to testify.

(b)     State the substance of the facts and opinions on which your experts

are expected to testify and provide a summary of the factual

grounds for each opinion.

RESPONSE:

## CERTIFICATION

I hereby certify that the statements made in response to the foregoing interrogatories are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

E.M. SERGEANT PULP & CHEMICAL COMPANY, INC.

By: _____

Title: _____

Date: _____

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, a copy of Travelers Second Set of Interrogatories

to Plaintiff E.M. Sergeant Pulp & Chemical Company, Inc. were served by electronic and regular

mail upon the following:

> Joseph A. Ferriero, Esq.
> Joseph A. Ferriero, P.C.
> 50 Main Street, Suite 6
> Hackensack, New Jersey  07601
> Attorney for Plaintiff

JOHN MALONEY

Dated:  December 20, 2012

1625720_1

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 2:12-CV-1741

—   —   —   —   —   —   —

|  |  |  |
|---|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO., INC. and SERGEANT CHEMICAL COMPANY, | : : : | |
| Plaintiffs, | : : | DEPOSITION OF: |
| vs. | : : | ALBERT F. REISCH, JR. |
| TRAVELERS INSURANCE COMPANY, INC. and COLUMBIA INSURANCE COMPANY, | : : : | |
| Defendants. | : : | |

—   —   —   —   —   —   —

TRANSCRIPT of testimony as taken by and before DEBORAH GIFFIN, a Certified Shorthand Reporter and Notary Public of the State of New Jersey at the law offices of JOSEPH A. FERRIERO, P.C., 50 Main Street, Hackensack, New Jersey on Thursday, November 15, 2012 commencing at 10:03 a.m.

B. SPINNER ASSOCIATES

CERTIFIED SHORTHAND REPORTERS

477 SOUTH HORIZON WAY, NESHANIC STATION, NEW JERSEY 08853

TELEPHONE (908) 369-3931

A. Reisch - direct

Q.    Did E.M. Sergeant --

A.    I mean, I should say I still have some minute books from SCC that go back, so I guess they did have meetings now and then because they did have a corporate meeting book, but I don't remember anything.

Q.    Do you have any other files or records from SCC besides the corporate meeting books?

A.    No.  No.

Q.    Turning back to EMS for a minute, are you aware whether EMS used an insurance broker historically in connection with obtaining insurance?

A.    Yes, they did.

Q.    And do you recall any of the brokers that E.M. Sergeant may have used?

A.    William Stake or Stake & Company.

Q.    And who are William Stake & Company?

A.    They were a broker on Wall Street in New York.

Q.    Did you ever have any interactions --

A.    I heard the name, you know, "We're dealing with William Stake," and someone would come in and I'd steal a card for William Stake and I'd

B. SPINNER ASSOCIATES

34

A. Reisch - direct

1   see so-and-so.  That would be the extent of it.

2        Q.    So you never had any meetings or

3   interactions with anyone from there?

4   A.    No.

5        Q.    When someone from William Stake &

6   Company came to the office, who would they meet

7   with if not you?

8   A.    They probably would have met with a fellow

9   called Mr. Murphy.

10       Q.    And what was Mr. Murphy's first

11  name?

12  A.    I don't remember.  He was the bookkeeper.

13  Or they'd meet with Mr. Poland.  I gave the name

14  before.

15       Q.    How long was Mr. Murphy employed by

16  E.M. Sergeant?

17  A.    I don't know.  A long time.

18       Q.    Was he there before 1975?

19  A.    Yes.

20       Q.    And do you know approximately when

21  he stopped being employed by E.M. Sergeant?

22  A.    No, I haven't any idea.

23       Q.    Do you know if he was employed into

24  the '80s?

25  A.    I know he wasn't employed into the '80s.

B. SPINNER ASSOCIATES

A. Reisch - direct

1      Q.      He was not?

2    A.      He was not.

3      Q.      And do you know if Mr. Murphy is

4    alive or dead?

5    A.      I know that he is dead.

6      Q.      Other than Mr. Murphy, is there

7    anyone else that representatives from William

8    Stake would have met with?  And Mr. Poland, I'm

9    sorry.

10   A.      Would have met with Mr. Grenon, too.

11     Q.      And Mr. Grenon was also employed by

12   E.M. Sergeant?

13   A.      Yes.

14     Q.      What was Mr. Grenon's position with

15   E.M. Sergeant?

16   A.      He was the bookkeeper.

17     Q.      For E.M. Sergeant?

18   A.      Correct.

19     Q.      What was Mr. Poland's position with

20   E.M. Sergeant?

21   A.      He was the Vice-President.

22     Q.      Now, you mentioned Mr. Murphy and

23   Mr. Grenon were both bookkeepers.  Did one

24   succeed the other?

25   A.      Right.  Mr. Grenon succeeded Murphy.

B. SPINNER ASSOCIATES

36

A. Reisch - direct

1    Q.    Okay.  And how long was Mr. Grenon

2    employed by E.M. Sergeant?

3    A.    15 years maybe.

4    Q.    So sometime into the late '80s,

5    early '90s?

6    A.    Into the '80s, mid '80s maybe.

7    Q.    Do you know what happened to

8    Mr. Grenon?

9    A.    He's deceased.

10    Q.    Other than William Stake & Company,

11    do you recall any other brokers that were used by

12    EMS?

13    A.    Alexander & Alexander.

14    Q.    Any others?

15    A.    I believe Fireman's Fund rings a bell.

16    Schiff Terhune.  Those are the only names I can

17    recall.

18    Q.    Now, of the names that you just

19    provided, was William Stake & Company the oldest

20    in time that you recall?

21    A.    It seemed to me they were the oldest.

22    Q.    Do you know if E.M. Sergeant was

23    using them at or about the time you started in

24    '75?

25    A.    I don't remember if we were still using

B. SPINNER ASSOCIATES

A. Reisch - direct

1    them or if we had switched over to another

2    broker.

3            Q.      Okay.   Is E.M. Sergeant still using

4    a broker?

5    A.      Yes, we are.

6            Q.      And who is that?

7    A.      Scirocco.

8            Q.      How do you spell that?

9    A.      I don't know.

10           Q.      That's okay.

11           Do you know about when E.M. Sergeant

12   may have stopped using William Stake & Company?

13   A.      No.   I don't know.   No.

14           Q.      And do you know what happened to

15   that company?

16   A.      No.

17           Q.      Do you have any knowledge as to any

18   brokers that were used by E.M. Sergeant before

19   1975?

20   A.      No.

21           Q.      Do you have any understanding or

22   knowledge as to who at E.M. Sergeant would have

23   worked with brokers before 1975?

24   A.      Well, probably Mr. Poland who was the

25   President of the company.

                    B. SPINNER ASSOCIATES

38

A. Reisch - direct

1              MR. FERRIERO:  Do you have direct

2      knowledge as to who or are you just --

3      A.     He would have.  When these brokers came

4      in, he'd talk to them, he'd go over the insurance

5      policy.

6              Q.     Mr. Poland would?

7      A.     Mr. Poland would, sure.  And the

8      bookkeeper would be there, too.

9              Q.     Mr. Murphy?

10     A.     Mr. Murphy, then Mr. Grenon.

11             Q.     But this was before 1975, so it

12     would have been Mr. Murphy at that time?

13     A.     Probably Mr. Murphy, yes.

14             Q.     And do you know how long Mr. Murphy

15     was with the company?  I can rephrase that.

16             Do you know when Mr. Murphy started

17     with the company?

18     A.     No, I don't.

19             Q.     Do you know when Mr. Poland started

20     with the company?

21     A.     No, I don't.

22             Q.     Can you approximate either of those?

23     A.     No.

24             (Ledger sheet, Bates No. 000529,

25     received and marked as Exhibit A.Reisch-2 for

                    B. SPINNER ASSOCIATES

A. Reisch - direct

1    see "Travelers HP" something there.  To me, that

2    means we had an insurance policy -- this is the

3    way I read it.

4         Q.    Okay.

5    A.    An insurance policy with Travelers and

6    that was probably the number of it.

7         Q.    Okay.

8    A.    It covered the period January '49 to '50,

9    covered liability, and the "CD2," I'd probably

10   have to go to the journal, it's Cash Disbursement

11   2 and probably said how much we paid for it.

12   That's how I read this.

13        Q.    Okay.  Let's talk about that entry.

14   You're talking about the January 7, 1949 entry,

15   right?

16   A.    I just happened to see that one.

17        Q.    That's fine.

18             Next to the word "Travelers" it says

19   "HP" and then some digits, and then it provides

20   the years you just described, and then next to it

21   it says, "Tenants Liability?"

22   A.    I think that's what that says.

23        Q.    Do you have any understanding what

24   "Tenants Liability" might mean?

25   A.    No.

B. SPINNER ASSOCIATES

A. Reisch - direct

1      Q.      Was E.M. Sergeant a tenant anywhere?

2   A.      We were a tenant at 7 Dey Street.

3      Q.      But with respect to the Lister

4   Avenue address in Newark, E.M. Sergeant was an

5   owner, not a tenant?

6   A.      E.M. Sergeant was an owner.

7      Q.      Okay.   Do you have any understanding

8   as to what type of insurance might have been

9   afforded by this policy?

10  A.      No.

11     Q.      If you go a little higher up on this

12  page, there's an entry on November 24 of 1948.

13  Do you see that one?

14  A.      Okay.

15     Q.      It also says "Travelers" next to it?

16  A.      Yes.

17     Q.      And it has some numbers and then it

18  has the initials "W.C.?"

19  A.      Yes, I see that.

20     Q.      And it says, "12/1/48-12/1/49?"

21  A.      Correct.

22     Q.      Do you have any understanding what

23  "W.C." might stand for?

24  A.      No.

25     Q.      Did E.M. Sergeant typically procure

B. SPINNER ASSOCIATES

44

A. Reisch - direct

1  Workers Compensation insurance?

2  A.     Yes, they did.

3         Q.     You did typically?  They did?

4  A.     Now.  I don't know in 1948.

5         Q.     Okay.  Do you have any understanding

6  as to whether the "W.C." might mean Workers Comp?

7  A.     No.

8         Q.     But you're not sure what it does or

9  doesn't mean?

10 A.     Correct.

11        Q.     There's a third entry, if you look

12 at February 21 of '49, that references Travelers.

13 A.     Okay.

14        Q.     And, again, it says the word

15 "Travelers" and it has some letters and numbers?

16 A.     Correct.

17        Q.     I believe it says, "12/1/47-12/1/48,"?

18 and then it says, "Additional?"

19 A.     I see that.

20        Q.     Do you have an understanding of what

21 "Additional" might mean?

22 A.     No.

23        Q.     And in these ledgers, have you seen

24 other instances where the word "Additional"

25 appears?

B. SPINNER ASSOCIATES

45

A. Reisch - direct

1    A.    No.

2         Q.    So that word has no particular

3    meaning to you?

4    A.    No.  Correct.

5         Q.    And do you have an understanding as

6    to what type of insurance policy this third entry

7    might be?

8    A.    Which one?

9         Q.    The February 21.

10   A.    No, I don't.

11        Q.    With respect to this ledger page,

12   does this ledger page relate to E.M. Sergeant or

13   SCC?

14   A.    E.M. Sergeant, I believe.

15        Q.    And how do you know that?  How is

16   that discernible?

17   A.    Because -- I don't know.  I don't know.

18        Q.    In this time frame, 1948/1949, do

19   you know if E.M. Sergeant and SCC kept separate

20   books?

21   A.    I don't know.

22        Q.    Okay.  You can put that aside for

23   now.

24             MR. MALONEY:  Can we mark that as

25   A.Reisch-3?

                    B. SPINNER ASSOCIATES

46

A. Reisch - direct

1          (Ledger sheets, Bates Nos. 000553

2    through 000558, received and marked as Exhibit

3    A.Reisch-3 for Identification.)

4          Q.    Sir, I'm going to hand you a

5    document that's been marked as A.Reisch-3, and

6    this is a document bearing production numbers

7    000553 through 558, and it's also a ledger sheet.

8          On the top right corner of that

9    document, sir, you'll see it again says, "Account

10   No. P7," and actually I think it says that on

11   every page.

12         MR. FERRIERO:  Just for the record,

13   the one exhibit is document 553 through 558.

14         MR. MALONEY:  Didn't I say that?

15         MR. FERRIERO:  You just said 553.

16         Q.    I believe on each page it references

17   account number P7, and I know I asked you this

18   earlier, does that have any meaning to you?

19   A.    No.

20         Q.    Do you have any understanding as to

21   whether this ledger relates to E.M. Sergeant or

22   Sergeant Chemical Company?

23   A.    No.

24         Q.    Is there any way for you to tell?

25   A.    No.

                    B. SPINNER ASSOCIATES

48

A. Reisch - direct

1          MR. MALONEY:  Yes, second column.

2          Q.    I won't hold you to that if it's a 3

3    or a 5 or what number that is, but you do see

4    where I'm referring to?

5    A.    I do see what you're talking to.

6          Q.    I think that says, "Travelers Public

7    Liability."  Does that seem right to you?

8    A.    Yes.

9          Q.    And, again, there's some letters and

10   numbers and a date from '64 to '65.  Do you have

11   any understanding as to what "Public Liability"

12   may refer to?

13   A.    No.  And do you have any understanding as

14   to what kind of insurance this might relate to?

15   A.    No.

16         Q.    If you look at the next entry, which

17   looks like it has a June date attached to it,

18   either the 10th, 11th, or both, again, it says,

19   "Travelers," and, again, there's some numbers.

20   And then beneath that I have a difficult time

21   making out the first word, but I think the second

22   word is "Cancellation."  Do you see that?

23   A.    I see that.

24         Q.    Do you have an understanding what

25   that first word might be?

B. SPINNER ASSOCIATES

50

A. Reisch - direct

1    it says, "Refund Travelers Insurance," some

2    letters and numbers, date "4/1/63," and then I

3    think it might say, "Audit Manufacturers

4    Liability?"

5    A.    That's what it says there.  It looks like

6    that, yes.

7         Q.    Do you have any understanding of

8    what "Audit Manufacturers Liability" might refer

9    to?

10   A.    No.

11        Q.    Do you have any understanding as to

12   what type of insurance this might refer to?

13   A.    No.

14        Q.    Was E.M. Sergeant a manufacturer of

15   anything?

16   A.    No.

17        Q.    The entry begins with the word

18   "Refund."  Do you have any understanding what the

19   word "refund" might refer to?

20   A.    I know what "refund" means, but I don't

21   know what it means there.

22        Q.    As we discussed, it does have the

23   stamp that says "E.M. Sergeant."  But do you have

24   any understanding as to whether this entry

25   relates to E.M. Sergeant or it relates to

B. SPINNER ASSOCIATES

51

A. Reisch - direct

1  Sergeant Chemical?

2  A.    I don't know.

3      Q.    And the stamp, does this influence

4  your ability to answer?

5  A.    No.

6      Q.    Other than the entries I've just

7  shown you, are you aware of any ledger entries in

8  your possession or E.M. Sergeant's possession

9  that relate to Travelers?

10  A.    No.

11          MR. MALONEY:  Why don't we take five

12  minutes?

13          (Whereupon, a short recess was

14  taken.)

15          (E.M. Sergeant Draft Primary

16  Insurance Coverage Chart and Draft Excess

17  Insurance Coverage Chart, Bates Nos. 000515

18  through 000517, received and marked as Exhibit

19  A.Reisch-5 for Identification.)

20      Q.    Sir, I'm going to hand you a

21  document that's been marked as A.Reisch-5, and

22  it's actually two documents in the sense the

23  production stamp is 000515 to 517, and the first

24  two pages are E.M. Sergeant Draft Primary

25  Insurance Coverage Chart and the last page is

B. SPINNER ASSOCIATES

56

A. Reisch - direct

1    policy may have been issued by Travelers?

2    A.    No.

3         Q.    And if I could turn your attention

4    to the middle sentence, it says that "Travelers

5    has provided insurance to EM and Sergeant."  EM

6    is defined as E.M. Sergeant, Sergeant is defined

7    as Sergeant Chemical Company.  So that second

8    sentence says that "Travelers has provided

9    insurance to E.M. Sergeant and to Sergeant

10   Chemical Company."  Do you have any understanding

11   as to which of those years relates to EM as

12   opposed to Sergeant Chemical Company?

13   A.    No.

14        Q.    Okay.  You can put that aside for

15   now.

16            Other than the people we've

17   discussed today, are you aware of any other

18   persons that would have knowledge of E.M.

19   Sergeant's historical insurance coverage?

20   A.    No.

21        Q.    And are you aware of any other

22   records, other than the ones that we've looked at

23   or discussed today, that would have reference or

24   relate to E.M. Sergeant's historical insurance

25   policies?

                    B. SPINNER ASSOCIATES

## C E R T I F I C A T E

I, DEBORAH GIFFIN, a Certified Shorthand Reporter and Notary Public of the State of New Jersey do hereby certify that prior to the commencement of the examination the witness and/or witnesses were sworn to testify the truth, the whole truth, and nothing but the truth.

I do further certify that the foregoing is a true and accurate computer-aided transcript of the testimony as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth.

I do further certify that I am neither of counsel nor attorney for any party in this action and that I am not interested in the event nor outcome of this litigation.

_____
Notary Public of the State of New Jersey
My commission expires March 18, 2017

Dated:    December 7, 2012

# EXHIBIT D

E.M. Sergeant's Answers to Travelers First Set of Request for Admissions

1. Admit

2. Admit

3. Deny. Reimbursement Ledgers provided.  Would require a more exhaustive search on reimbursements.

4. Deny. See document bate stamped 000554.

5. See bate stamp 000554. Travelers kept same policy number throughout coverage.

6. See bate stamp 000524, 000542, 000553, 000563, 000564, 000566.

7.   See bate stamp 000554. Travelers kept same policy number throughout coverage.

8. Admit

9. Admit

10. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

11. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

12. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

13. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

14. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

15. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

16. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

17. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

18. Admit

19. Admit

20. Admit

21. Admit

22. A plain reading of the document references a timing of initial underwriting in the early 1960's

23. See bate stamp 000554. Cancelled policy due to forklift accident.

24. Deny

25. Deny

26. Deny

27.  See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

28. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

29. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

30. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

31. See bate stamp 000554. Travelers kept same policy number throughout coverage. See payments made to Stake and summary of ledgers in 000519 to 0000522.

32. See bate stamp 000554. Travelers kept same policy number throughout coverage

33. See bate stamp 000554. Travelers kept same policy number throughout coverage.

34 See bate stamp 000554. Travelers kept same policy number throughout coverage.

35. Admit

36. Admit

37 Admit

38. Admit

Sergeant chemical Answers to Request for Admissions

39. Question unclear as to whose records are requested.

40. Admit

41. See document bate stamp 000018-000019 and 001288 to 001294

42. See 41, nature of operations consistent.

43. See document bate stamp 000018-000019 and 001288 to 001294

<u>CERTIFICATION</u>

I hereby certify that the statements made in response to the foregoing are true.   I am aware

that if any of the foregoing statements are willfully false, I am subject to punishment.

E.M. SERGEANT PULP & CHEMICAL
COMPANY, INC.

By: _____

Title: _____ _Exec   V. P._ _____

Date: _____ _04/10/2013_ _____

5

John Maloney
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700
Attorneys for Defendant
The Travelers Indemnity Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO., INC. AND SERGEANT CHEMICAL COMPANY, | : : : : | Civil Action No. 2:12-cv-1741 (FSH) (PS) Hon. Faith S. Hochberg, U.S.D.J. Hon. Patty Shwartz, U.S.M.J. |

Plaintiffs,

v.

THE TRAVELERS INDEMNITY COMPANY and COLUMBIA INSURANCE COMPANY,

Defendants.

THE TRAVELERS INDEMNITY
COMPANY'S FIRST SET OF REQUESTS
FOR ADMISSIONS TO PLAINTIFF
E.M. SERGEANT PULP & CHEMICAL CO.

TO:    Joseph A. Ferriero, Esq.
       Joseph A. Ferriero, P.C.
       50 Main Street, Suite 6
       Hackensack, New Jersey 07601

Pursuant to Rule 36 of the Federal Rules of Civil Procedure and the Pretrial

Scheduling Order entered in this matter, defendant The Travelers Indemnity Company

("Travelers") submits to plaintiff E.M. Sergeant Pulp & Chemical Company ("Plaintiff" or

"Sergeant") the following requests for admissions (the "Requests").  Plaintiff is required to

answer each Request separately and fully in writing, under oath, and to serve a copy of its

answers in the time and in the manner set forth in the Federal Rules of Civil Procedure, the Local

Civil Rules of the United States District Court for the District of New Jersey and/or any applicable court order entered in this action. The Requests shall be read and interpreted in accordance with the definitions and instructions set forth below.

Dated: March 6, 2013

/s/ John Maloney
John Maloney
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

Attorneys for Defendant
The Travelers Indemnity Company

## INSTRUCTIONS

The following general instructions apply to each of the Requests set forth herein:

1. The instructions are an integral part of these Requests.

2. These Requests contain a list of definitions of certain frequently used terms. It is essential that you refer to and utilize the definitions of all defined terms in the course of answering the Requests.

3. These Requests seek all information available to you or in your possession, custody or control from any source, wherever situated, including but not limited to information from any files, records, documents, employees, former employees, officers, former officers, directors, former directors, agents, former agents, counsel and former counsel.

4. Travelers does not seek the disclosure of privileged information. With respect to any information that you withhold on a claim of confidentiality or privilege, including the attorney-client privilege and the work-product doctrine, furnish a log of such documents or information providing at least the following: the nature, subject matter, date, title, author, and addressees of the documents or information, the identity of all recipients of the document or information or copies thereof, and the asserted basis for withholding the document or information.

1670442_2

5.      If you do not answer any Request or subpart thereof on the basis of any claim of privilege, state the privilege asserted or claimed, and the facts upon which you rely to support the claim of privilege.

6.      For each Request, a complete response is required to each part or portion with the same effect as if such part or portion were propounded as a separate Request. If you object to any Request, the objection should clearly state to which part or portion of the Request it is directed.

7.      If, in answering any of these Requests, you claim any ambiguity in interpreting an Request or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, but you should set forth as part of the response the language that you claim is ambiguous and the interpretation chosen or used in responding to the Request.

8.      When used herein the words "and" and "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the Request all responses which might otherwise be construed to be outside its scope. "Each" shall be construed to include the word "every" and "every" shall be construed to include the word "each." "Any" shall be construed to include the word "all" and "all" shall be construed to include the word "any." The use of the term "including" shall be construed to mean "without limitation."

9.      References to the singular shall include the plural and references to the plural shall include the singular. References to the masculine gender include the feminine gender.

10.     The use of a verb in any tense shall be construed as the use of the verb in the past or present tense, as necessary to bring within the scope of the Request all responses which might otherwise be construed to be outside its scope.

11.     These Requests shall be deemed continuing so that supplemental answers shall be provided as soon as additional responsive information and documents become available.

<u>DEFINITIONS</u>

As used herein:

A.      "Action" means Civil Action No. 2:12-cv-1741 in the United States District Court for the District of New Jersey.

B.      "Address" means the present or last known street name and number, city or town, state and zip code.

C.      "And" and "or" shall be defined to include both "and" and "or" and shall always be read to require the more inclusive answer.

1670442_2

D.   "Any" means "all" and vice versa.

E.   "Communication" means any oral or written transmission of information between persons, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, electronic mail, telecopies, telexes, conferences or seminars.

F.   "Concerning," "relate," "relating to" or "regarding" mean consisting of, referring to, reflecting, concerning or having logical or factual connection with the matter discussed.

G.   "Document" or "Documents" means, by way of illustration and not by way of limitation, the following items, whether printed or recorded or reproduced by any other mechanical process, written, produced by hand or produced by or stored in a computer, regardless of origin or location: books, records, communications, reports, correspondence, letters, electronic mail, data, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, applications, booklets, brochures, catalogues, circulars, magazines, pamphlets, periodicals, bulletins, instructions, minutes, other communications (including but not limited to, inter- and intra-office communications), purchase orders, bills of lading, bid tabulations, questionnaires, surveys, contracts, agreements, options to purchase, memoranda of agreements, assignments, licenses, books of account, orders, invoices, statements, bills, checks, vouchers, ledger sheets, accounts, journals, cancelled checks, bank statements, bank passbooks, confirmations, statements of accounts, analyses, diaries, graphs, notebooks, charts, tables, maps, sketches, chains of custody, time sheets, manifests, working papers, plans, indices, summaries or records of meetings or conferences, summaries or reports of investigations or negotiations, opinions or reports of accountants or consultants, data sheets, data processing cards, photographs, photographic negatives, phono-records, tape recordings, discs, wire recordings, transcripts of recordings, drawings, motion picture film, advertisements, press releases, drafts, and marginal comments appearing on any such documents, all other written or printed matter of any kind, or any other and all other data compilations from which information can be obtained and translated if necessary.

H.   "Fireman's Fund" means Fireman's Fund Insurance Company together with its predecessors, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

I.   "Person" or "Persons" means a natural person, firm, proprietorship, association, partnership, corporation or any other type of organization or entity.

J.   "Primary Source Documents" means any Documents maintained by E.M. Sergeant and/or SCC during the usual course of their business that relate to the business of one or both of these entities and which contemporaneously recorded the events or matters reflected therein.

4

K.    "SCC" means Sergeant Chemical Company together with its predecessors, and its past and present parents, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

L.    "Site" means the real property formerly owned by E.M. Sergeant and commonly referred to as 120 Lister Avenue, Newark, New Jersey, including any adjacent surface waters.

M.    "Travelers" means Defendant The Travelers Indemnity Company together with its predecessors, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

N.    "Underlying Claim(s)" means any and all property damage or bodily injury claims or demands for money or services arising from E.M. Sergeant and/or SCC's historical products and/or operations for which E.M. Sergeant seeks insurance coverage from Travelers in the within Action, including the third party complaint filed by Maxus Energy Corporation and Tierra Solutions, Inc. against E.M. Sergeant in the Superior Court of New Jersey, Law Division, Essex County, docket no. ESX-L-9868-05.

O.    "You," "your," "Plaintiff" or "E.M. Sergeant" means Plaintiff E.M. Sergeant Pulp & Chemical Company together with its predecessors, and its past and present parents, subsidiaries, affiliates, assignees, licensees, employees, representatives, attorneys and others acting for or on its behalf.

## REQUESTS

1.    Plaintiff does not have custody or control over any insurance ledgers for E.M. Sergeant relating to the years 1943 through 1947.

RESPONSE:


2.    Plaintiff does not have custody or control over any insurance ledgers for SCC relating to the years 1943 through 1947.

RESPONSE:


3.    Plaintiff does not have custody or control over any Primary Source Documents evidencing reimbursements for the payment of premiums for insurance policies,

1670442_2

either from E.M. Sergeant to SCC or from SCC to E.M. Sergeant, relating to the years 1943 to 1964.

RESPONSE:

4.    Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy bearing policy number KOS-1747699, as referenced on the "Draft Primary Insurance Coverage Chart" produced by plaintiff bearing production stamp 000515.

RESPONSE:

5.    Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect from April 4, 1945 to April 4, 1946, as referenced on the "Draft Primary Insurance Coverage Chart" produced by plaintiff bearing production stamp 000515.

RESPONSE:

6.    The only Primary Source Documents over which Plaintiff has custody or control that reference Travelers are insurance ledgers produced by plaintiff bearing production stamps 000529, 000554, 000560 and 001362.

RESPONSE:

7.    Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1943.

RESPONSE:

6

8.      Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1945.

RESPONSE:

9.      Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1946.

RESPONSE:

10.      Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1955.

RESPONSE:

11.      Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1956.

RESPONSE:

12.      Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1957.

RESPONSE:

13.    Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1958.

RESPONSE:

14.    Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1959.

RESPONSE:

15.    Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1960.

RESPONSE:

16.    Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1961.

RESPONSE:

17.    Plaintiff does not have custody or control over any Primary Source Documents relating or referring to an alleged insurance policy issued by Travelers and in effect during 1962.

RESPONSE:

1670442_2

18.    The document produced by plaintiff bearing production stamp 000702 was not maintained by E.M. Sergeant and/or SCC during the usual course of their business prior to 2000.

RESPONSE:

19.    The document produced by plaintiff bearing production stamp 000702 was obtained from Fireman's Fund.

RESPONSE:

20.    Plaintiff has no corporate relationship with Fireman's Fund and does not maintain custody or control over documents maintained by Fireman's Fund.

RESPONSE:

21.    Plaintiff does not know the identity of the individual who drafted the document produced by plaintiff bearing production stamp 000702.

RESPONSE:

22.    Plaintiff does not know when the document produced by plaintiff bearing production stamp 000702 was drafted.

RESPONSE:

23.    Plaintiff does not know what information, if any, was relied upon by the individual who drafted the document produced by plaintiff bearing production stamp 000702.

RESPONSE:

24.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1943.

RESPONSE:

25.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1945.

RESPONSE:

26.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1946.

RESPONSE:

27.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1955.

RESPONSE:

28.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1956.

RESPONSE:

29.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1957.

RESPONSE:

30.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1958.

RESPONSE:

31.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1959.

RESPONSE:

32.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1960.

RESPONSE:

33.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1961.

RESPONSE:

1670442_2

34.    The document produced by plaintiff bearing production stamp 000702 is the sole basis on which plaintiff alleges that Travelers issued an insurance policy to plaintiff that was in effect during 1962.

RESPONSE:

35.    Plaintiff does not have any information or documents referring or relating to the limits of liability for any insurance policies allegedly issued by Travelers to E.M. Sergeant between 1943 and 1964.

RESPONSE:

36.    Plaintiff does not have any information or documents referring or relating to the terms and conditions of any insurance policies allegedly issued by Travelers to E.M. Sergeant between 1943 and 1964.

RESPONSE:

37.    Plaintiff does not have any information or documents referring or relating to the limits of liability for any insurance policies allegedly issued by Columbia Insurance Company to E.M. Sergeant between 1948 and 1963.

RESPONSE:

38.    Plaintiff does not have any information or documents referring or relating to the terms and conditions of any insurance policies allegedly issued by Columbia Insurance Company to E.M. Sergeant between 1948 and 1963.

RESPONSE:

39.    Plaintiff does not know where any of William Stake & Company, Inc.'s files relating to E.M. Sergeant and/or SCC are currently located, or if they even still exist.

RESPONSE:

40.    Plaintiff does not know the identity and current address of any former employees of William Stake & Company, Inc.

RESPONSE:

41.    Plaintiff is not aware of any releases or discharges of hazardous or non-hazardous waste, chemicals or other substances at or from the Site other than the releases described in the document produced by plaintiff bearing production stamp 001033-36.

RESPONSE:

42.    Plaintiff is not aware of any releases or discharges of hazardous or non-hazardous waste, chemicals or other substances at or from the Site prior to July 24, 1956.

RESPONSE:

43.    Plaintiff is not aware of any alleged basis for liability in any Underlying Claims other than the releases described in the document produced by plaintiff bearing production stamp 001033-36.

RESPONSE:

1670442_2

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of Travelers First Request for Admissions to Plaintiff E.M. Sergeant Pulp & Chemical Company, Inc. was served by electronic and regular mail upon the following:

> Joseph A. Ferriero, Esq.
> Joseph A. Ferriero, P.C.
> 50 Main Street, Suite 6
> Hackensack, New Jersey  07601
> Attorneys for Plaintiff

JOHN MALONEY

Dated:  March 6, 2013

14

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 2:12-CV-1741

```
—    —    —    —    —    —    —

E.M. SERGEANT PULP &            :
CHEMICAL CO:, INC. and          :
SERGEANT CHEMICAL COMPANY,      :
                                :
    Plaintiffs,                 :
                                :   DEPOSITION OF:
    vs.                         :   SCOTT REISCH
                                :
TRAVELERS INSURANCE             :
COMPANY, INC. and COLUMBIA      :
INSURANCE COMPANY,              :
                                :
    Defendants.                 :

—    —    —    —    —    —    —
```

TRANSCRIPT of testimony as taken by and before DEBORAH GIFFIN, a Certified Shorthand Reporter and Notary Public of the State of New Jersey at the law offices of JOSEPH A. FERRIERO, P.C., 50 Main Street, Hackensack, New Jersey on Thursday, November 15, 2012 commencing at 11:31 a.m.

18

S. Reisch - direct

1  of the other or not?

2  A.    No.  I believe wholeheartedly that they

3  were strictly separate companies.

4        Q.    But are you certain of that?

5  A.    Certain to the point of I've seen, I

6  believe that I've seen formation documents and

7  dissolution documents of Sergeant Chemical, I've

8  seen separate formation documents of E.M.

9  Sergeant, and that's pretty much what I know.

10       Q.    Do you have an understanding as to

11 who the shareholders of Sergeant Chemical Company

12 were?

13 A.    You know what, as I was overhearing, I

14 realized I don't really know that.  I can't

15 answer that.

16       Q.    Okay.  And do you know one way or

17 the other whether E.M. Sergeant owned shares of

18 Sergeant Chemical?

19 A.    I don't know that.

20       Q.    Okay.  Does E.M. Sergeant still

21 maintain corporate records relating to Sergeant

22 Chemical Company other than minutes of corporate

23 meetings?

24 A.    Yeah.  We still have, we still have

25 journals.  We have general ledger journals.  We

B. SPINNER ASSOCIATES

30

S. Reisch - direct

1  A.     An understanding?  No, I don't have an

2  understanding.

3       Q.    Do you know one way or the other

4  whether "W.C." might relate to Workers

5  Compensation?

6  A.    I would think that "W.C." relates to

7  Workers Compensation.

8       Q.    The handwriting on this page, too,

9  do you have any understanding as to whose

10  handwriting it is?

11  A.    No.

12          Why am I waiting?  Of course not.  I

13  don't know who wrote this.  I don't know.  I'm

14  studying this.  Why?  I don't know who wrote

15  this, 1948.

16       Q.    Do you know who may have been

17  responsible at either E.M. Sergeant or SCC for

18  maintaining insurance coverage in the late '40s?

19  A.    In the late '40s, no.

20       Q.    The second entry relating to

21  Travelers appears, it's the first entry under

22  1949, January 7, and it references the phrase,

23  "Tenants Liability."  Do you have an

24  understanding as to what that refers to?

25  A.    No.

B. SPINNER ASSOCIATES

31

S. Reisch - direct

1      Q.     Do you have an understanding what

2    "Tenants Liability" coverage might be?

3    A.    No.   I'm unfamiliar with "Tenants

4    Liability."

5      Q.     And, to your understanding, was E.M.

6    Sergeant a tenant anywhere in the 1949 to 1950

7    time period?

8    A.    E.M. Sergeant, no, I'm not certain.   I

9    believe they had offices, but other than that, I

10   don't know too much.

11     Q.     With respect to the Lister Avenue

12   location in Newark, is it your understanding that

13   E.M. Sergeant was not a tenant at that location

14   in this time period, 1949 to 1950?

15   A.    E.M. Sergeant?

16     Q.     E.M. Sergeant.

17   A.    E.M. Sergeant I believe owned that

18   property.

19     Q.     Okay.   The third entry on this page,

20   it relates to Travelers, has the years '47 to

21   '48, so it appears to refer to something in the

22   past, and this appears to be a ledger of 1949 and

23   has the phrase "Additional."

24   A.    Okay.

25     Q.     Do you know what the word

B. SPINNER ASSOCIATES

32

S. Reisch - direct

1  "Additional" might refer to?

2  A.    Well, it's some form of additional

3  coverage.  I don't know what in addition

4  specifically, no.

5      Q.    Do you know if it refers to

6  additional coverage or additional premium?

7  A.    I don't.

8      Q.    The very next line has the word, I

9  believe it's "Buildings."  Do you understand the

10 word "Additional" to relate to buildings or that

11 to be a separate entry?

12 A.    Don't know.  I don't know.

13     Q.    Do you have any understanding as to

14 what type of insurance may have been provided by

15 this entry?

16 A.    No, sir.

17     Q.    If I could have you turn to Exhibit

18 A.Reisch-3, which is this one (indicating), and

19 if I could have you turn to the second page, in

20 the second column under the year 1964, do you see

21 there's two references to Travelers there?

22 A.    Yes, sir.

23     Q.    Well, first of all, do you recognize

24 the handwriting on this document any differently?

25 A.    It looks the same to me.

B. SPINNER ASSOCIATES

40

S. Reisch - direct

1      Q.    Do you have an understanding why a

2  refund on a Travelers policy in the early '60s

3  would be reflected on this ledger as opposed to a

4  refund from a Travelers policy in the early '60s

5  that was reflected on A.Reisch-3, the last

6  exhibit we just looked at?

7  A.    Yeah, I got you.

8      Q.    In other words, why would one be

9  recorded --

10  A.    I'm not sure.  I don't know.

11      Q.    This entry references, "Audit

12  Manufacturers Liability."  Do you have an

13  understanding what that relates to?

14  A.    Well, you know, I had never understood

15  that to be "Manufacturers."  No offense.  I see

16  "Audit" and "Liability."  I'm not sure exactly

17  what the refund would be in reference to, other

18  than what I considered to be more or less the

19  normal policy of annual insurance review of prior

20  year's business, and if there's an over or

21  undercharge, you're charged or you get some money

22  back.

23      Q.    You said you didn't understand it to

24  be "Manufacturers."  Did you understand it to be

25  something else?

B. SPINNER ASSOCIATES

41

S. Reisch - direct

1    A.    No.  No offense.  I tried looking at that

2    and I couldn't figure it out, but maybe, sure,

3    maybe you're right.

4         Q.    Okay.  At or about this time in the

5    early '60s, did you have an understanding as to

6    what types of insurance policies E.M. Sergeant

7    procured?

8    A.    No.

9         Q.    Do you have an understanding that it

10   had more than one insurance policy, though?

11   A.    Yeah, I believe so.

12        Q.    In other words, it had different

13   risks that were insured in different policies?

14   A.    Correct.

15        Q.    And those policies may have come

16   from different insurance companies, correct?

17   A.    Correct.

18        Q.    Now, if I could turn you back to

19   A.Reisch-2, just as an example, this is the '48

20   to '49 ledger.

21   A.    Sure.

22        Q.    In addition to the three Travelers

23   references we discussed, there are several other

24   insurance references.  This whole page appears to

25   relate to insurance, correct?

B. SPINNER ASSOCIATES

44

S. Reisch - direct

1    A.    Yes.

2                Would you please repeat your

3    question just so I can be certain?

4                Q.    Certainly.

5                MR. MALONEY:  Can I just ask you to

6    read it back?

7                THE WITNESS:  Thanks a lot.

8                (Whereupon, the following question

9    was read back:

10               "Question:  Okay.  Other than the

11   ledger entries on the three exhibits that you

12   have in front of you, are you aware of any other

13   ledger entries referencing Travelers?")

14   A.    Ledger entry referencing Travelers, I'm

15   not aware of any other ledger entries referencing

16   Travelers.

17               Q.    Are you aware of any other documents

18   of any sort, historical documents, referencing

19   Travelers?

20   A.    Well, yes.

21               Q.    And what are those?

22   A.    Can I mention this exhibit (indicating)?

23               Q.    Sure, absolutely.

24   A.    This AR-6.

25               Q.    And are you referring to the

                    B. SPINNER ASSOCIATES

56

S. Reisch - direct

1    the third page.  Skipping to the second page,

2    there's a letter from Mr. Hayes of Fireman's

3    Fund.  Have you seen this letter before?

4    A.    Yes.

5        Q.    At what time did you see it?

6    A.    Well, this document has been part of our

7    file since the end of 2004 and that's when I

8    first saw it, when Daniele received it, and we

9    took a lot closer look at Travelers.

10        Q.    So if you turn to 702, there's a

11    handwritten document there?

12    A.    Right.

13        Q.    Did E.M. Sergeant first receive this

14    document from Fireman's Fund?

15    A.    Candidly, I don't recall who received that

16    underwriting account.  I believe Daniele received

17    it directly.  I don't believe it came to me.

18        Q.    Yeah, this document, 702, this isn't

19    a document that comes from E.M. Sergeant's files?

20    A.    Oh, no, no, no.

21        Q.    It's a document that E.M. Sergeant

22    received either through Daniele or through

23    yourself from Fireman's Fund?

24    A.    Correct.  I didn't supply this document.

25        Q.    Okay.  So this was a document

B. SPINNER ASSOCIATES

57

S. Reisch - direct

1    received from Fireman's Fund?

2    A.     Correct.

3         Q.     And do you have an understanding as

4    to how it was maintained by Fireman's Fund?

5    A.     I believe it was maintained in their

6    underwriting file.

7         Q.     All right.  And that's an

8    underwriting file for an excess policy that

9    Fireman's Fund issued sometime in the mid to late

10   '60s?

11   A.     Well, it looked like Fireman's was

12   reviewing the policy.  They sent their

13   underwriter who made these notes about INA

14   presently binding our high limits and your

15   company having previously insured us before the

16   loss in '58.

17        Q.     Do you have an understanding as to

18   who wrote the note?

19   A.     It's my belief that the underwriter for

20   the Fireman's Fund would have written this note

21   and included it in their file.

22        Q.     But do you know who specifically

23   wrote it?

24   A.     No, sir.

25        Q.     It references, "Travelers previously

B. SPINNER ASSOCIATES

58

S. Reisch - direct

1    on line for about 40 years." Do you know what

2    the basis for the 40 years is?

3    A.    No, sir.

4         Q.    And when it references that

5    Travelers was on line," do you have an

6    understanding of what they mean by "on line?"

7    A.    I don't know what they mean. I know what

8    I mean. But, you know, it's basically -- I don't

9    know what they mean. The guy's dead probably,

10   but it looks like to me that this is an

11   independent verification of our research

12   mentioning Travelers and the fact that Travelers

13   was our insurance company for those years. This

14   isn't E.M. Sergeant. This is just some

15   absolutely unrelated and unbiased person writing

16   this, supplying this piece of paper. It was a

17   nice thing to get.

18        Q.    Do you know what type of insurance

19   it references?

20   A.    I do not, although, might I add, that

21   since they're mentioning here "1963 losses and

22   payment of $35,000," well -- no, excuse me, I

23   don't know.

24        Q.    And do you know whether the policy

25   referenced in here would relate to either E.M.

B. SPINNER ASSOCIATES

63

S. Reisch - direct

1   A.    I really do not, sir.

2        Q.    Is it E.M. Sergeant's understanding

3   or position that both Travelers and Columbia

4   issued primary policies during those periods?

5   A.    I think that primary is not specified, so

6   I can't, I can't confirm or deny that.  We are

7   claiming, though, dual coverage of some sort.

8        Q.    With respect to the Travelers

9   policies, and this is generally, do you have any

10  understanding as to what the policy limits for

11  any of the Travelers policies might be?

12  A.    I don't, no.

13       Q.    Do you have any understanding of

14  what the term and conditions of any of those

15  policies might be?

16  A.    I don't know.

17       Q.    All right.  You can put that to the

18  side for a moment.

19  A.    Sure.

20            MR. MALONEY:  S.Reisch-4.

21            (More Specific Responses to Document

22  Demand received and marked as Exhibit S.Reisch-4

23  for Identification.)

24       Q.    Mr. Reisch, I'm going to hand you a

25  document that's been marked as S.Reisch-4.  It's

B. SPINNER ASSOCIATES

68

S. Reisch - direct

1                    C E R T I F I C A T E

2

3          I, DEBORAH GIFFIN, a Certified

4    Shorthand Reporter and Notary Public of the State

5    of New Jersey do hereby certify that prior to the

6    commencement of the examination the witness

7    and/or witnesses were sworn to testify the truth,

8    the whole truth, and nothing but the truth.

9          I do further certify that the foregoing

10   is a true and accurate computer-aided transcript

11   of the testimony as taken stenographically by and

12   before me at the time, place, and on the date

13   hereinbefore set forth.

14         I do further certify that I am neither of

15   counsel nor attorney for any party in this action

16   and that I am not interested in the event nor

17   outcome of this litigation.

18

19                    _____

20   _____
     Notary Public of the State of New Jersey
     My commission expires March 18, 2017

21

22   Dated:   December 7, 2012

23

24

25

                    B. SPINNER ASSOCIATES

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 2:12-CV-1741

—    —    —    —    —    —    —

E.M. SERGEANT PULP &                :
CHEMICAL CO., INC. and              :
SERGEANT CHEMICAL COMPANY,          :
                                    :
    Plaintiffs,                     :
                                    :   VOLUME II
    vs.                             :   DEPOSITION OF:
                                    :   SCOTT REISCH
TRAVELERS INSURANCE                 :
COMPANY, INC. and COLUMBIA          :
INSURANCE COMPANY,                  :
                                    :
    Defendants.                     :

—    —    —    —    —    —    —

        TRANSCRIPT of testimony as taken by and

before DEBORAH GIFFIN, a Certified Shorthand

Reporter and Notary Public of the State of New

Jersey at the law offices of JOSEPH A. FERRIERO,

P.C., 50 Main Street, Hackensack, New Jersey on

Thursday, November 15, 2012 commencing at

11:44 a.m.

B. SPINNER ASSOCIATES
CERTIFIED SHORTHAND REPORTERS
477 SOUTH HORIZON WAY, NESHANIC STATION, NEW JERSEY 08853
TELEPHONE (908) 369-3931

70

A P P E A R A N C E S:

    JOSEPH A. FERRIERO, ESQ.
      50 Main Street - Suite 6
      P.O. Box 157
      Hackensack, New Jersey 07601
    Attorney for the Plaintiffs.

    GRAHAM CURTIN
      4 Headquarters Plaza
      P.O. Box 1991
      Morristown, New Jersey 07962-1991
    BY:   JOHN MALONEY, ESQ.,
    Attorney for the Defendants.

B. SPINNER ASSOCIATES

75

S. Reisch - direct

1   Travelers and that "DS" is a prefix for a policy

2   330528, and I believe it might be specifically

3   regarding extra coverage for the chlorine

4   business.  Because, you know, in speaking to my

5   father, I know that they were always concerned

6   about that business, keeping that business

7   well-insured.

8          Q.     All right.  And you're talking

9   specifically about the chlorine business?

10  A.     Correct, the New Jersey chlorine business.

11         Q.     What do you mean by "extra

12  coverage?"

13  A.     I mean, what I believe is I guess some

14  form of liability coverage.

15         Q.     I'm just trying to understand when

16  you said "extra coverage," did you mean an

17  umbrella policy or some sort of additional

18  coverage specific to chlorine?

19  A.     Unknown, to be candid.  Unknown exactly.

20  When I refer to liability, I mean very generally

21  and broad as just a form of insurance against a

22  potential problem with chlorine.  I don't have

23  any more specific details at all.

24         Q.     Do you know if that page relates to

25  Sergeant Chemical or E.M. Sergeant?

B. SPINNER ASSOCIATES

76

S. Reisch - direct

1    A.    I believe that it's Sergeant Chemical,

2    although with only this in front of me, I don't

3    know exactly sure.  I think I had made copies of

4    the covers and associated them with which ledger

5    it was specific to.

6              MR. FERRIERO:  We produced the

7    cover, didn't we?

8              MR. MALONEY:  Yes, you did produce

9    the cover.

10             MR. FERRIERO:  Do you have the

11   ledger that went along with this?

12             MR. MALONEY:  It's in the

13   production, but I don't have the full production

14   with me.

15             MR. FERRIERO:  Just so we can

16   clarify his answer whether it's E.M. Sergeant or

17   Sergeant, if the cover shows what it's from, it

18   would be helpful.

19             MR. MALONEY:  Okay.  And just so I

20   understand, when it was produced, would the page

21   follow the cover that it was associated with?

22             THE WITNESS:  The cover first, page

23   second is I believe how, I believe that's what I

24   did.

25             MR. MALONEY:  Okay.  I'd have to

                    B. SPINNER ASSOCIATES

78

S. Reisch - direct

1   have any idea who drafted this ledger?

2   A.    No.  No, sir, I do not.

3        Q.    But this ledger was maintained by

4   either E.M. Sergeant or Sergeant Chemical?

5   A.    Yes, sir.

6        Q.    And currently it's in E.M.

7   Sergeant's possession?

8   A.    Correct.

9        Q.    In the right column under the year

10  1949, I believe it says "Refund Travelers WC

11  policy," again some letters and digits, and then

12  "Canceled 10/9/49?" ·

13  A.    Yes, sir.

14       Q.    Do you have an understanding as to

15  what the refund may refer to or what the word

16  "refund" refers to?

17  A.    My belief is that we also had a Workmens

18  Comp policy with Travelers and that that "NJV" is

19  a prefix for that policy which appears to have

20  been canceled.

21       Q.    Okay.  And canceled as of that date

22  you believe?

23  A.    From what it -- I guess so.  From looking

24  at this, that's what it looks like to me.

25       Q.    Okay.  And, then, similarly, under

                    B. SPINNER ASSOCIATES

82

S. Reisch - direct

1    I'm trying to relay.

2        Q.    The reference here in the left

3    column, the two references to Travelers, do you

4    have an understanding as to what types of

5    policies those are?

6    A.    What I confidently believe is that they're

7    not Workmens Comp policies because of the fact

8    that they don't say, they're not referred to as

9    "WC," as well as there's -- I think the "NJ"

10   prefix with Travelers is usually, as found in the

11   right column, is what tips you off to a Workmens

12   Comp policy.  So the "DS," I don't know exactly

13   what that refers to, but when the bracket is

14   "chlorine," that leads me to believe that it had

15   something very specific to do with that piece of

16   the operation.

17       Q.    Okay.  But you don't have any

18   specific knowledge?

19   A.    No, sir.  In terms -- may I?

20       Q.    Sure.

21   A.    In terms of a declaration page or

22   something like that, by no means do we have that.

23            (Answers to First Set of Request for

24   Admissions with Request for Admissions received

25   and marked as Exhibit S.Reisch-6 for

                    B. SPINNER ASSOCIATES

146

S. Reisch - direct

1              C E R T I F I C A T E

2

3          I, DEBORAH GIFFIN, a Certified

4    Shorthand Reporter and Notary Public of the State

5    of New Jersey do hereby certify that prior to the

6    commencement of the examination the witness

7    and/or witnesses were sworn to testify the truth,

8    the whole truth, and nothing but the truth.

9          I do further certify that the foregoing

10   is a true and accurate computer-aided transcript

11   of the testimony as taken stenographically by and

12   before me at the time, place, and on the date

13   hereinbefore set forth.

14         I do further certify that I am neither of

15   counsel nor attorney for any party in this action

16   and that I am not interested in the event nor

17   outcome of this litigation.

18

19              _D.Giffin_____

20   Notary Public of the State of New Jersey
     My commission expires March 18, 2017

21

22   Dated:  June 4, 2013

23

24

25


              B. SPINNER ASSOCIATES

**EXHIBIT F**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL ACTION NO. 2:12-CV-1741

—    —    —    —    —    —    —

| | |
|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO., INC. and SERGEANT CHEMICAL COMPANY,    :<br><br>Plaintiffs,    :<br><br>    :<br>vs.    :<br><br>TRAVELERS INSURANCE COMPANY, INC. and COLUMBIA INSURANCE COMPANY,    :<br><br>Defendants.    : | DEPOSITION OF:<br>DANIELE CERVINO |

—    —    —    —    —    —    —

    TRANSCRIPT of testimony as taken by and

before DEBORAH GIFFIN, a Certified Shorthand

Reporter and Notary Public of the State of New

Jersey at the law offices of JOSEPH A. FERRIERO,

P.C., 50 Main Street, Hackensack, New Jersey on

Thursday, November 15, 2012 commencing at

1:16 p.m.

9

Cervino - direct

1   claim, and drafting and prosecuting historical

2   insurance claims.

3        Q.    All right.  Is it fair to say that

4   as counsel for E.M. Sergeant you've coordinated

5   their search for historical insurance

6   information?

7   A.    Yes.

8        Q.    And in coordinating that search, who

9   at E.M. Sergeant have you worked with?

10  A.    Scott Reisch and Al Reisch.

11       Q.    What roles did they play with

12  respect to that search?

13  A.    It's hard to say because I wasn't there

14  with them.

15       Q.    Okay.  That's fair.

16            Was one of them your primary

17  contact?

18  A.    Yes, Scott Reisch.

19       Q.    Okay.  And you're aware that you're

20  here today because you were named as a person

21  with relevant knowledge to this litigation.

22  A.    Yes.

23       Q.    And what is your understanding as to

24  what that relevant knowledge is?

25  A.    That I was, I would say, the conduit for

B. SPINNER ASSOCIATES

13

Cervino - direct

1      Q.      Okay.  With respect to the five

2  Travelers policies that are listed, do you have

3  an understanding as to what type of coverage is

4  provided by any of them?

5  A.      No.

6      Q.      Is it possible that these policies

7  could relate to, for example, Workers

8  Compensation or, you know, a variety of different

9  insurance types?

10  A.      It's possible.

11      Q.      There are several other references

12  to Columbia on here or at least two more. Do you

13  have an understanding as to who Columbia is?

14  A.      No.

15      Q.      Do you know from the references that

16  you looked at if Columbia has any more to its

17  name than Columbia or at least how it's recorded

18  by one of the Sergeant entities?

19  A.      I could only find the name Columbia.

20      Q.      I saw that you have made some effort

21  to locate Columbia and that you did at least

22  locate Columbia Casualty which wasn't formed

23  until the 1970s and indicated that they wouldn't

24  have issued coverage in the '40s or '50s or '60s

25  because they didn't exist, is that correct?

B. SPINNER ASSOCIATES

32

Cervino - direct

1    that's true for all four entries?

2    A.    Yes.

3         Q.    Do you have an understanding as to

4    what types of policies these might be?

5    A.    No, other than the fact that in

6    parentheses it says, "Manufacturers Insurance

7    Policy."

8         Q.    And do you have an understanding why

9    E.M. Sergeant would procure a manufacturer's

10   insurance policy?

11   A.    I recall seeing in the Sergeant Chemical

12   ledgers manufacturers liability insurance

13   policies.  Sergeant Chemical sold chlorine

14   cylinders and that would have been a higher risk

15   than E.M. Sergeant's repackaging or selling

16   sealed packages of chemicals.  So they may have

17   purchased a special risk policy stand-alone for

18   that chlorine operation because that was a risky

19   operation.

20        Q.    It's your understanding that a

21   manufacturer's insurance policy and the

22   references to chlorine would likely relate to

23   SCC?

24   A.    Yes.

25        Q.    And, actually, in fact, in paragraph

B. SPINNER ASSOCIATES

39

Cervino - direct

1    A.    I don't believe it was from this e-mail.

2        Q.    A different e-mail?

3    A.    Correct.

4        Q.    In quantifying the share, the

5    percentage share for period, is there a reason

6    that the excess limits are not considered in the

7    current loss?

8    A.    I don't know why she didn't consider that.

9        MR. MALONEY:  All right.  Can we go

10    off the record for a second?

11        (Whereupon, a discussion was held

12    off the record.)

13        Q.    We talked about the assumption for

14    the PD limits for those '56 to '64 years.  Have

15    you ever seen anything that references either

16    property damage or aggregate or any kind of

17    limits for any Alleged Travelers Policies?  And I

18    think you're holding A.Reisch-5, and the first

19    entry does reference a limit, but we're not sure

20    the origin right now?

21    A.    Correct.

22        Q.    Other than that, have you seen any

23    other specific references to Travelers' limits?

24    A.    No.

25        Q.    What about Columbia, have you ever

B. SPINNER ASSOCIATES

44

Cervino - direct

1    Sergeant, do you have any other basis to believe

2    that earlier policies would have been issued to

3    both entities?

4    A.    Other than the premium set forth on the

5    ledgers, no.

6         Q.    We talked about policy limits and

7    how in A.Reisch-5 there's at least one reference

8    to a policy limit for the Travelers policy, and I

9    think that's the '43 policy.  Do you have any

10   information or understanding of any terms or

11   conditions for any of the alleged Travelers

12   policies?

13   A.    No.

14        Q.    With respect to the alleged

15   Travelers policies referenced in the Complaint,

16   do you have any understanding as to whether those

17   policies are primary or excess or umbrella?

18   A.    No.

19        Q.    As we discussed a moment ago,

20   there's an overlap between the alleged Travelers

21   years in paragraph three and the alleged Columbia

22   years in paragraph four.  Do you have an

23   understanding as to that overlap?  You know, just

24   for example, both Columbia and Travelers are

25   alleged to have issued policies from '55 to '63.

B. SPINNER ASSOCIATES

52

## C E R T I F I C A T E

       I, DEBORAH GIFFIN, a Certified Shorthand Reporter and Notary Public of the State of New Jersey do hereby certify that prior to the commencement of the examination the witness and/or witnesses were sworn to testify the truth, the whole truth, and nothing but the truth.

       I do further certify that the foregoing is a true and accurate computer-aided transcript of the testimony as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth.

       I do further certify that I am neither of counsel nor attorney for any party in this action and that I am not interested in the event nor outcome of this litigation.

_____

Notary Public of the State of New Jersey
My commission expires March 18, 2017

Dated:    December 7, 2012

**EXHIBIT G**

Sheet No. 1

Terms

Rating

Credit Limit

NAME Insurance Expense

ADDRESS

Account No. P 7

600529

| DATE | ITEMS | FOLIO | ✓ | DEBITS |
|---|---|---|---|---|
| 1948 July 1 | | JJ 250 | | 1842 75 |
| 31 | 4/1/47-4/1/48 W.C. PL. 2206 32 2206 33 | CD 6 | | 98 08 |
| | | | | 1940 83 |
| Oct 1 | 1/2 Life Ins. Premium | JJ 256 | B | 213 25 |
| 6 | Royal RCS 535112 4/9/48-10/9/49 W.C. | CD 19 | A | 379 94 |
| 26 | 8/31 Sod. Silico Fluo. Mor MacDown | CD 23 | | 19 10 |
| | | | | 2553 12 |
| Nov 24 | Traveler # 62095 W.C. 12/1/48-12/1/49 | CD 30 | | 2173 18 |
| | | | | 1583 62 |
| Dec. | Accrual of 10/29 bill for ... Fire-... Bldg. | JJ 261 | C | 752 40 |
| 31 | Insurance on Life of A.R. | JJ 264 | | 624 30 |
| | | | | 3962 32 |
| 1949 Jan. 7 | Traveler HP 81724 Liability 1/13/49-1/13/50 | CD 2 | | 12 00 |
| | HOME # 3618 1/1/49-1/1/50 Stock reporting Policy | CD 9 | | 635 58 |
| Feb. 15 | Travelers UB 245850 12/1/47-12/1/48 additional | CD 10 | | 20 53 |
| 21 | | | | 668 11 |
| | Building 10/12/48-3/10/49 | CD 23 | | 55 25 |
| April 20 | Columbia 454333 | | | 723 36 |
| May 9 | Soya 1-3300 Continental Fire | CD 28 | | 181 50 |
| 19 | " 3301/5203 | CD 30 | | 123 87 |
| | | | | 1027 73 |
| July 19 | Columbia 454421 3 years 3/10/49-3/10/52 Bldgs. 1-2-3-4-6-7 | CD 42 | D | 1893 55 |
| | | | | [illegible] |
| Aug 4 | Sod. Silico | CD 44 | | 2 93 |
| 22 | | CD 47 | | 24 63 |
| | | | | 2949 84 |
| Sept 30 | | J 300 | | 473 40 |
| | | | | 3423 24 |
| Nov. 4 | | CD 62 | | 142 82 |
| 10 | | CD 64 | | 12 59 |
| 17 | | CD 65 | | 46 92 |
| 18 | | " | | 70 86 |
| 21 | | " | | 32 50 |
| | | | | [illegible] |
| [illegible] | | CD 70 | | [illegible] |

| DATE | ITEMS | FOLIO | ✓ | CREDITS |
|---|---|---|---|---|
| 1948 Oct 31 | Transferred to S.C.C. | JJ 258 | A | 379 94 |
| Dec 31 | | JJ 266 | B | 213 25 |
| | | " | | 624 30 |
| | | " | C | 752 40 |
| | P & L | JJ 270 | | 1992 43 |
| | | | | 3962 32 |
| 1949 Mar. 30 | Refund HOME # 2800 Stock Reporting 1/1/48-1/1/49 | CR 14 | | 432 62 |
| July 19 | Refund Columbia 395173 BLDG. # 5 3/10/49-11/18/51 | CD 62 | | 264 81 |
| | | | | 697 43 |
| Sept 1 | | J 299 | D | 1893 55 |
| | | | | 2590 98 |
| Dec. 2 | N.S. ... | CD 53 | | 30 29 |

# EXHIBIT H

Account No. ___ P7 ___ Insurance

NAME

ADDRESS

Sheet No. ___ 6 ___

Terms

Rating

Credit Limit

| DATE 196Y | ITEMS | FOLIO | DEBITS | DATE 196Y | ITEMS | FOLIO | CREDITS |
|---|---|---|---|---|---|---|---|

000554

# EXHIBIT I

AUG

| | | | | | |
|---|---|---|---|---|---|
| 1 | Aug. | Fisher Scientific Co. | | | |
| 2 | | Geigy Chemical | | | |
| 3 | | General Aniline & Film | | | |
| 4 | | S.B. Penick | | | |
| 5 | | Toulech Labs | | | |
| 6 | | United Wool Piece Dye & Fin | | | |
| 7 | | Jacques Wolf & Co. | | 9273 | |
| 8 | | Battelle & Renwick | | | |
| 9 | | Nopco Chemical | | 798 | |
| 10 | | Diamond Alkali | | | |
| 11 | | " " | | | |
| 12 | | Barry Bisané | | | |
| 13 | HC | Brill Co. | | | |
| 14 | | H. ver Royal | | | |
| 15 | | Trubek Chemical | | 9183 | |
| 16 | 30 | William Stihr ( | ) | | 163 |
| 17 | | General Chemical (Allied Chem. Chicf) | | | |
| 18 | | Township of Livingston | | | |
| 19 | | E. M. SERGEANT PULP and CHEMICAL CO., Inc. | | 33760 | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |
| 24 | | | | | |
| 25 | | | | | |
| 26 | | | | | |
| 27 | | | | | |
| 28 | | | | | |
| 29 | | | | | |
| 30 | | | | | |

000560

**EXHIBIT J**

Sheet No.

Terms

Rating

Credit Limit

NAME    _Insurance Expense_

ADDRESS

Account No. P 7

| DATE | ITEMS | FOLIO | DEBITS | DATE | ITEMS | FOLIO | CREDITS |
|---|---|---|---|---|---|---|---|

001362

# EXHIBIT K

I.N.A. PRESENTLY BINDING HIGH LIMIT.

TRAVELERS PREVIOUSLY ON LINE FOR ABOUT 40 YRS —
CANCELLED OUT BECAUSE OF 1963 LOSSES AND PAYMENT
OF $35,000 MADE IN 1963 ON 1958 CLAIM.

SALES ABOUT 1,000,000.-

000702

# EXHIBIT L

Account No.
NAME
ADDRESS

Sheet No.
Terms
Rating
Credit Limit

| DATE | ITEMS | FOLIO | DEBITS | DATE | ITEMS | FOLIO |
|------|-------|-------|--------|------|-------|-------|

000524

E. M. SERGEANT PULP and CHEMICAL CO., Inc.

| | | | |
|---|---|---|---|
| | | 9 11 | 1 1 1 0 40 |

To set up rent for quarter

30  Bad Debts   M6   1 2 5 00
    Reserve for Bad Debts   91   1 2 5 00
    To set up reserve for quarter

30  Labor — Chlorine   05   2 843 10
    Labor — Chemicals   044   2 843 10
    To charge labor
    to chlorine dept.
    for quarter
        Lewis Moody   1133 69
        Wm. Edmonds   936 50
        Aaron Sindos Jr   773 50
                        2 843 10

30  Income accrued   04   2 58 06
    Interest Income   04   2 58 06
    To accrue interest on 180 day
    Treasury bills $ 300000
                    29440 35
                    559 65
    883/180 × 559.65 = 258 06
    for next quarter  2 79 87
    10/1 - 10/8   21 77

30  Income   
    Insurance   P2   1 092 44
        accrued Expense   910   1 092 44
        To defer income from
    Insurance refund of 5/6/64
    until new bill for replacement
    insurance is received from
    reversed   Insurance Co. of North America
    9/30 J #8

5   E. M. SERGEANT PULP and CHEMICAL CO., Inc.   9 11   1 09 56
        Freight out   NV   1 09 56
    H. S. Bill 8/28/64 Paid 6/5
    S Adams Coppers - Freight In
    on I.C.C. Bill

000542

Sheet No. 5

Terms
Rating
Credit Limit

NAME  Insurance
ADDRESS

Account No. P - 2

| DATE 1960 | ITEMS | FOLIO ✓ | DEBITS | DATE 1960 | ITEMS | FOLIO ✓ | CREDITS |
|---|---|---|---|---|---|---|---|
| Nov 31 | Bal Fwd | Fwd 976 | 1863 | Dec 31 | P & L | June | 598 |
| Dec 31 | 1961 | C81 | 1/637 | Dec 31 | | Inv | 1847 |
| Jan 3 | 1961 | C84 | 190204 | 1961 | | 815 | 10010 |
| Feb 9 | | C84 | 23077 | Jan 3 | Div cash | CR1 | 5420 |
| April 4 | 85967 | C89 | 1970 | Dec 1 | " Stock | CR61 | 5526 |
| June 30 | 1154197 | C8 | 26366 | | | | 1149 |
| Aug 18 | 6 xxx6 | C819 | 91393 | | | | |
| Oct 30 | 1756.11 | C85 | 912391 | | | | |
| Nov 16 | 891 | C86 | 113367 | | | | |
| | | | 18497 | | | | |
| Dec 31 | 20191 | C88 | 3532 | | | | |
| | 7 | C89 | 1559 | | | | |
| | 102 | C8 31 | 134066 | Dec 31 | P & L | CR1 | 24627 |
| | 145077 | C89 | 1081 | 1962 | Div 1760 cash | CR1 | 27309 |
| April 10 | | C8 1st | 11706 | May 4 | Repair | | 1580 |
| May 4 | | C819 | 116750 | May 4 | | CR1 | 16591 |
| May 15 | | Fwd | 13731 | Aug 17 | | CR31 | 151615 |
| | 9131 7 | | | | | A | 349 31 |
| June 6 | | C8 1st | 16833 | | | | |
| Aug 13 | | C8 | 4533 | | | | |
| Oct 18 | | C8 | 18490 | | | | |
| 4 | | Fwd | | | | | 349 31 |

No. 28 Form A  GOLDSMITH BROS., Stationers & Printers, 77 Nassau St., N.Y. 8, CO 7-7900

000553

SEP   1964

1   ates Receivable (Sperisoc exp)   cl                | 38 73 |
        ffes Rec (Prepreser.)   cl                      |       | 38 7
        To adjust posting of 4/28/64
        ninmi 6-mo. Schdule to exp
        Perepse

30  Prepaid Expense  Insurance   GL              | 50 36 4 |
                    Insurance   P7                |         | 5 03 6
        To defer 9/28 payment
        for insurance effective 10/1/64
        (Reversed) 10/1/64

30  Accrued Expense            9l°              | 10 92 00 |
                    Insurance   P7               |          | 10 92 00
        To reverse Jl°43
        of 6/30/64 as new
        Insurance Expended
        in 9/30 frextur

(22) 30  Insurance            P7               | 47433 |
                accrued Expense  9l°            |       | 47923
        To accrue 10/16/64 payment
        to Wm-Stele for I N A
        policy for 4/16/64 – 7/4/65

30  Insurance            P7               | 533 02 |
                accrued Expense  9l°           |        | 5 33 01
        To accrue applicable portion
        of 10/16 insurance payment
        for this year

                                        000563

E. M. SERGEANT PULP and CHEMICAL CO., Inc.

| | | | | | |
|---|---|---|---|---|---|
| | | | 911 | | 110 40 |
| | | To set up reserve for quarter | | | |
| | 30 | Bad Debts | M6 | 125 00 | |
| | | Reserve for Bad Debts | 91 | | 125 00 |
| | | To set up reserve for quarter | | | |
| | 30 | Labor — Chlorine | 0 | 2843 10 | |
| | | Labor — Chemicals | 014 | | 2843 10 |
| | | To charge labor | | | |
| | | to chlorine dept. | | | |
| | | for quarter | | | |
| | | Lewis Moody 1133 60 | | | |
| | | Wm. Edwards 936 60 | | | |
| | | Adam Sudo Jr 773 90 | | | |
| | | 2843 10 | | | |
| | 30 | Income accrued | C4 | 758 06 | |
| | | Interest Income | D4 | | 758 06 |
| | | To accrue interest on 180da | | | |
| | | Treasury bills 30000 00 | | | |
| | | due 10/8/64 | | | |

$$\frac{88}{180} \times 559.65 = 758.06$$

| | | | | | |
|---|---|---|---|---|---|
| | 30 | Income accrued | P2 | 1092 44 | |
| | | Insurance | 910 | | 1092 44 |
| | (1) | accrued Expense | | | |
| | | To defer income from | | | |
| | | Insurance refund of 4/6/64 | | | |
| | | until new bill for replacement | | | |
| | | insurance is received from | | | |
| reversed | | Insurance Co. of North America | | | |
| 9/30 J+8 | | | | | |
| | 5 | E. M. SERGEANT PULP and CHEMICAL CO., Inc. | 911 | 109 56 | |
| | | Freight out | N4 | | 109 56 |
| | | H.S. Bill 4/28/64 Paid 6/5 | | | |
| | | S Adams Coppers — Freight on | | | |
| | | on I.C.C. Bill | | | |

JUN  1964

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 30 | Rent - Chlorine machinery | PN | | | 16 30 | | | | | |
| | Rent - chlorine cylinders | PN | | | 300 26 | | | | | |
| | E. M. SERGEANT PULP and CHEMICAL CO., Inc. | 911 | | | | | 316 61 | | | |
| | To set up rent for quarter | | | | | | | | | |
| 30 | Rent - Automotive Equipment | PN | | | 1110 40 | | | | | |
| | E. M. SERGEANT PULP and CHEMICAL CO., Inc. | 911 | | | | | 1110 40 | | | |
| | To set up rent for quarter | | | | | | | | | |
| 30 | Bad Debts | M6 | | | 125 00 | | | | | |
| | Reserve for Bad Debts | 91 | | | | | 125 00 | | | |
| | To set up Reserve for quarter | | | | | | | | | |
| 30 | Labor - chlorine | OH | | 2843 10 | | | | | | |
| | Labor - chemicals | OH | | | | | 2843 10 | | | |
| | To charge labor | | | | | | | | | |
| | to chlorine dept. | | | | | | | | | |
| | for quarter | | | | | | | | | |
| | James Moody   1133 60 | | | | | | | | | |
| | Geo. Edwards   936 50 | | | | | | | | | |
| | Aaron Jordan   773 00 | | | | | | | | | |
| | 2843 10 | | | | | | | | | |
| 30 | Income accrued | CN | | 2580 06 | | | | | | |
| | Interest Income | CN | | | | | 2580 06 | | | |
| | To accrue interest on 180 day | | | | | | | | | |
| | Treasury bill # 70000 00 | | | | | | | | | |
| | due 10/8/64 | | | | | | | | | |
| | 80 x 5.9.65 = 2580 06 | | | | | | | | | |
| | 180 | | | | | | | | | |
| | for last quarter | | | | | | | | | |
| | 10-1 - 10-8 | | | | | | | | | |
| 30 | Income | PP | | 1092 44 | | | | | | |
| | Insurance | 910 | | | | | 1092 44 | | | |
| | To defer income from | | | | | | | | | |
| | insurance refund of 5/26/64 | | | | | | | | | |
| | until new bill for replacement | | | | | | | | | |
| | insurance is received from | | | | | | | | | |
| | Insurance Co. of North America | | | | | | | | | |
| 5 | E. M. SERGEANT PULP and CHEMICAL CO., Inc. | 911 | | 109 56 | | | | | | |
| | Freight out | NN | | | | | 109 56 | | | |
| | U. S. Bill 8/25/64  Paid 6/5 | | | | | | | | | |
| | S Adams Express   Freight on | | | | | | | | | |
| | on I. C. C. Bill | | | | | | | | | |

000566

# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO., INC. AND SERGEANT CHEMICAL COMPANY, | : Civil Action No. 2:12-cv-1741 (DMC) (JBC)<br>: Hon. Dennis M. Cavanaugh, U.S.D.J.<br>: Hon. James B. Clark, U.S.M.J.<br>: |
| Plaintiffs, | :<br>: |
| v. | : |
| | AFFIDAVIT OF<br>JENNIFER GILBERT |
| THE TRAVELERS INDEMNITY COMPANY and COLUMBIA INSURANCE COMPANY, | :<br>: |
| Defendants. | :<br>: |

JENNIFER GILBERT, of full age, being duly sworn, deposes and says:

1.     I am a resident of the State of New Hampshire and am employed as a Claims Specialist by Fireman's Fund Insurance Company.

2.     I am generally aware of the allegations of the plaintiff in this action, namely, that The Travelers Indemnity Company allegedly issued insurance policies to E.M. Sergeant Pulp & Chemical Company, Inc. ("E.M. Sergeant") that were in effect during the 1940s, 1950s and early 1960s.

3.     I have no personal knowledge as to whether Travelers issued any policies of insurance to E.M. Sergeant at any time.  If any such policies were issued, I have no personal knowledge concerning the limits, terms or conditions of such policies.

4.     I have no personal knowledge as to who authored the handwritten note attached as Exhibit A hereto.  I also have no personal knowledge as to when such note was written.

2049244.1

I affirm that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

JENNIFER GILBERT

Dated: March 27, 2014

STATE OF NEW HAMPSHIRE    :
                          :    ss.
COUNTY OF Hillsborough    :

Sworn to before me this 27th day of March, 2014.

Notary Public

2049244 1

Exhibit A

I.N.A. PRESENTLY BINDING HIGH LIMIT.

TRAVELERS PREVIOUSLY ON LINE FOR ABOUT 40 YRS —
CANCELLED OUT BECAUSE OF 1963 LOSSES AND PAYMENT
OF $35,000 MADE IN 1963 ON 1958 CLAIM.

SALES ABOUT 1,000,000.-

**EXHIBIT N**

Exhibit N is filed separately under seal and is subject to Travelers simultaneously filed motion to seal pursuant to L. Civ. R. 5.3

**EXHIBIT O**

1/28/2014                                                          Harris, Robert

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF NEW JERSEY

 3                                          COPY

 4        _____
          E.M. SERGEANT PULP & CHEMICAL)
 5        CO., INC. AND SERGEANT        )
          CHEMICAL COPMANY,             )Civil Action No.
 6                                      )2:12-cv-1741
                           Plaintiffs,)(OMC)(MF)
 7        v.                            )
                                        )
 8        THE TRAVELERS INDEMNITY       )
          COMPANY AND COLUMBIA          )
 9        INSURANCE COMPANY,            )
                                        )
10                         Defendants.)
                                        )
11        _____)

12

13              DEPOSITION OF ROBERT J. HARRIS

14

15

16   DATE:            January 28, 2014

17   TIME:            1:30 p.m.

18   HELD AT:         Day Pitney
                      242 Trumbull Street
19                    Hartford, Connecticut

20
        By:           Sarah J. Miner, LSR #238
21                    Brandon & Huseby Reporting & Video
                      249 Pearl Street
22                    Hartford, Connecticut

23

24

25
```

E.M. Sergeant Pulp & Chemical v. Travelers

1/28/2014                                                    Harris, Robert

```
1    A P P E A R A N C E S:

2    For the Plaintiffs:

3    Joseph A. Ferriero, Esq.
     50 Main Street Suite 6
4    P.O. Box 157
     Hackensack, New Jersey   07602-0157
5    201-669-2929
     jf@ferriero.us
6

7    For the Defendants:

8    John Maloney, Esq.
     Graham Curtin
9    4 Headquarters Plaza
     P.O. Box 1991
10   Morristown, New Jersey   07962-1991
     973-401-7143
11   jmaloney@grahamcurtin.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

E.M. Sergeant Pulp & Chemical v. Travelers

1    June 1940.  And that typically indicates, I should say

2    it is my understanding that typically indicates that

3    this form of language was first available for use in

4    June of 1940.  My recollection is that the superseding

5    form, which we don't yet have in front of us, I think

6    it is among the ones that we produced, was issued in

7    1955.  And I am not aware of any intervening forms.

8         Q. So any policy with KDS from 1940 until we get

9    to the next KDS prefix policy would be what is marked

10   as P-23?

11            MR. MALONEY:  Objection to form.

12            MR. FERRIERO:  What is your objection?

13            MR. MALONEY:  Lots of objections.

14            MR. FERRIERO:  Okay.

15            MR. MALONEY:  When you say it would be KDS it

16   assumes a lot of things.  It assumes this would be the

17   totality of the policy.  It assumes, it speculates as

18   to what the rest of the policy would be comprised of

19   or that it would be this at all.  But I will let

20   Mr. Harris explain.  My objection is noted for the

21   record.  There is a lot of speculation and lot of

22   assumptions in that question.

23   BY MR. FERRIERO:

24        Q. I am going to go through it.

25        A. My understanding is that, and I will use an

E.M. Sergeant Pulp & Chemical v. Travelers

1/28/2014                                                            Harris, Robert

1    analogy, these policy, these basic policy forms are

2    like building blocks.  And so this basic building

3    block is what was available for use if a policy

4    numbered KDS was being issued.

5        Q.  In the 1940s?

6        A.  That is correct.  It would be susceptible.

7    First the totality of this language in the four pages

8    isn't necessarily applicable to a given policy.  If

9    this type of policy, if you read the declarations

10   page, another analogy it functions like an a la carte

11   menu.  You have to specifically select the coverages

12   and specifically select the subdivision of the

13   coverages and specifically rate the hazards associated

14   and assign limits to get a portion of the policy

15   applicable.  So this basic, this declarations page is

16   like a menu.  The following three pages explains

17   everything in the menu.  What you get in the policy is

18   dependent on which items from the menu you select.

19   And you can select as few as one of them.  And then

20   the second instance it depends on how the policy is

21   endorsed.  But the first building block would be the

22   KDS form with the qualification, again, I am shifting

23   the analogy a little bit, that the KDS form is a menu.

24   It is not -- just because you have a KDS form you

25   don't get every coverage that is listed on the form.

```
 1    The form provides you the options from which a

 2    specific policy is constructed by choosing the

 3    specific coverages and then appropriately endorsing

 4    them.

 5         Q. Specifically the KDS policy that is in front

 6    of you is a commercial liability policy; is that

 7    correct?

 8              MR. MALONEY:  Objection to form.

 9              THE WITNESS:  It is what was, if you flip to

10    the last page the actual title of the policy, but on

11    Bates Number 1399 bottom right-hand corner the

12    official title is manufacturers and contractors

13    liability policy.  And that is a commercial lines

14    policy affording the liability coverages that have

15    been selected from the menu.  In other words, the

16    specimen form shows you all the potential coverages.

17    In an actual policy you have to see which specific

18    coverages.

19    BY MR. FERRIERO:

20         Q. Where do you see the manufacturers?

21         A. 1399.

22         Q. I see manufacturers.  Do we have better

23    copies of these?

24              MR. MALONEY:  No.

25              THE WITNESS:  This is what we had internally.
```

E.M. Sergeant Pulp & Chemical v. Travelers

1/28/2014                                                          Harris, Robert

```
 1    correctly, we are assuming a policy was issued to the
 2    Sergeant entity that now has liability for discharges
 3    of hazardous substances that are from its premises.
 4    We are assuming that policy was written, at least
 5    initially on this KDS form.  And then the questions
 6    would be, and we are assuming that that form schedule
 7    declared the premises and operations that actually
 8    gave rise to this release.  Then we would have to
 9    assume that among the different property damage
10    coverages that can be selected subdivision one
11    premises operations was selected.  And then assuming
12    all that, then you are still left with all of the
13    issues raised by this policy with the policy language
14    we have in front of us.  Bearing in mind that we don't
15    know what endorsements were added.  This is a multiple
16    levels of assumptions to really reach a hypothetical.
17    Because we don't have a policy.  We don't have -- we
18    don't know which items from the menu were selected.
19    We don't know which premises were declared.  We don't
20    know what endorsements were added.  But if you were to
21    assume absolutely everything fell into line, that in
22    this hypothetical if we assume that exactly the right
23    policy was issued then it would be the premises
24    operations property damage coverage purchased under
25    that hypothetical policy, subject to all of the
```

E.M. Sergeant Pulp & Chemical v. Travelers

1/28/2014                                                    Harris, Robert

```
 1    an actual coverage analysis is because we don't have
 2    policies.  We have been unable to located anything
 3    regarding these policies in our files.  We have some
 4    numbers.  The numbers point us to forms that provide
 5    us with a la carte menus, and that is all we have.
 6    BY MR. FERRIERO:
 7        Q.  I am going to run through these for the
 8    record.  P-24 is another KDS policy; is that correct?
 9            MR. MALONEY:  Policy form.
10            THE WITNESS:  Yes, sir.  This is, as we
11    mentioned earlier, this is the specimen form version
12    of the July 1955 edition of the KDS form.
13    BY MR. FERRIERO:
14        Q.  So does that mean, sir, that any KDS policy
15    that was issued from 1940 to July of 1955 would be
16    P-23 and then after that from July 1955 until the next
17    modification of the policy would be P-24?
18            MR. MALONEY:  Objection to form.  Misstates
19    his prior testimony in that his prior testimony those,
20    the building blocks I believe is his phraseology would
21    be the starting point of those policies.  It wouldn't
22    be the totality.  I will let Mr. Harris answer.
23            THE WITNESS:  P-23 was the form we were
24    looking at just a moment ago?
25    BY MR. FERRIERO:
```

E.M. Sergeant Pulp & Chemical v. Travelers

1/28/2014                                                    Harris, Robert

```
1        Q. Yes.

2        A. Yes, as a very general rule that is my

3   understanding.  My understanding is that certain

4   states would require a form to be filed with the

5   insurance department before it could be used.  The

6   actual filing dates may differ from the edition dates.

7   But my understanding is that in a very general sense

8   between 1940 and 1945 if you had a KDS policy it

9   likely was on, as its first building block the

10  specimen form that is Exhibit P-23, and after 1955

11  likely was on the specimen form that is Exhibit P-24.

12       Q. Let me show you P-25.  Which is another, this

13  is a DS policy, correct?

14       A. That is correct.  And I believe we mentioned

15  it briefly earlier.  The principal difference between

16  the DS and the KDS being that if bodily injury

17  coverage was selected it was written in the Travelers

18  Insurance Company not the Travelers Indemnity Company.

19       Q. But the DS policies also covered property

20  damage, did they not?

21            MR. MALONEY:  Object to form.

22            THE WITNESS:  That is one of the menu items.

23  Again, if you don't have the declarations page of the

24  actual policy you don't know which of the coverages

25  were chosen.  For instance, if any property damage
```

1  coverage was chosen at all there are five different

2  options.   Any one of which, any two or three of which,

3  any four or five of which could have been chosen.

4  BY MR. FERRIERO:

5      Q. By the five options that you are referring to

6  it is premises-operations, elevators, independent

7  contractors, products, and contractual?

8      A. Yes, sir, that is correct.   So there is

9  generally speaking on this policy 10 different

10  coverage options to choose from, five for property

11  damage.   Five for bodily injury.   If you look at the

12  top of the policy right under where it says

13  declarations liability policy number DS you will see

14  it reads, "The insurance afforded is only with respect

15  to such and so many of the following coverages and

16  divisions thereunder as are indicated by specific

17  premium charge or charges.   The limit of the company's

18  liability against each such coverage and division

19  thereunder shall be as stated herein subject to all of

20  the terms of this policy having reference thereto."

21          And so when look at how the declarations page

22  is laid out, you have premium columns that correspond

23  to the coverage division columns and a specific

24  premium has to be entered for a specific coverage

25  to be available.   And then the specific limits with

E.M. Sergeant Pulp & Chemical v. Travelers

1/28/2014                                                          Harris, Robert

```
 1    premises, interest of named insured in premises, and

 2    owner, general lessee or tenant part occupied by named

 3    insured.  The business of the named insurance is.  And

 4    these are all elements of the declarations that need

 5    to be filled in.  So if you have an actual policy, not

 6    a specimen form, but a policy actually issued then it

 7    will tell you with respect to a specific premise what

 8    the named insured's interest is in that premise and

 9    the named insured's interest in that premise subject

10    to all of the language of the policy as found in the

11    form and endorsements.  It is that interest in those

12    premises for the hazards specified her in the premises

13    operation as defined, elevator hazard as defined,

14    structural alterations hazard as defined.  That is

15    what insurance is applicable to.  Whether it actually

16    applies depends on first having an actual policy with

17    language and then, secondly, the actual facts of the

18    claim.

19        Q. But can you envision any scenario where E.M.

20    Sergeant, the owner of the property, would be covered

21    under this policy if its tenant discharged chlorine

22    into the Passaic River?

23        MR. MALONEY:  Objection to the form.  You are

24    asking a liability question not a coverage question?

25        MR. FERRIERO:  No, whether it would be
```

E.M. Sergeant Pulp & Chemical v. Travelers

1/28/2014                                                                    Harris, Robert

```
 1   to look at it.
 2             MR. FERRIERO:  We would just ask if such a
 3   1955 form exists it be produced.
 4             MR. MALONEY:  We will take all requests under
 5   advisement if they are in writing.
 6   BY MR. FERRIERO:
 7        Q. Similarly your testimony to the first HP form
 8   that we reviewed would certainly apply to all of these
 9   other HP forms that coverage might be available for
10   this claim assuming all the appropriate endorsements
11   and policy menus were?
12        A. Yes, beginning with you have to have, you
13   can't reverse engineer and get to the declaration
14   pages content.  You just have to have the declaration
15   page.  But if we assume that the correct coverages
16   were chosen, the premium paid, all the information
17   that was required to be declared was declared, then
18   you could be potentially within the coverage of the
19   policy subject to all of the policy language and
20   endorsements.
21        Q. And certainly all of the policies from P-23
22   through P-31 did not have standard pollution
23   exclusions?
24             MR. MALONEY:  Objection to form.
25             THE WITNESS:  On these exhibits that we have
```

1/28/2014                                                                    Harris, Robert

1    C E R T I F I C A T E

2         I hereby certify that I am a Notary Public, in

3    and for the State of Connecticut, duly commissioned

4    and qualified to administer oaths.

5         I further certify that the deponent named in the

6    foregoing deposition was by me duly sworn and

7    thereupon testified as appears in the foregoing

8    deposition; that said deposition was taken by me

9    stenographically in the presence of counsel and

10   reduced to typewriting under my direction, and the

11   foregoing is a true and accurate transcript of the

12   testimony.

13        I further certify that I am neither of counsel

14   nor related to either of the parties to said suit, nor

15   of either counsel in said suit, nor am I interested in

16   the outcome of said cause.

17        Witness my hand and seal as Notary Public the 3rd

18   of February, 2014.

19

20

21   _Sarah J Muncis_

22   _____

23   Notary Public

24   My Commission Expires:

25   November 30, 2017