IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO., INC. AND SERGEANT CHEMICAL COMPANY, | : Civil Action No. 2:12-cv-1741 (KM) (MCA)<br>: Hon. Kevin McNulty, U.S.D.J.<br>: Hon. Madeline Cox Arleo, U.S.M.J. |
| Plaintiffs, | : Motion Return Date: September 2, 2014 |
| v. | : ORAL ARGUMENT REQUESTED |
| THE TRAVELERS INDEMNITY COMPANY INC. AND COLUMBIA INSURANCE COMPANY, | : Document Electronically Filed |
| Defendants. | : |

---

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF TRAVELERS MOTION FOR SUMMARY JUDGMENT**

---

Stephen V. Gimigliano
John Maloney
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700
Attorneys for Defendant
The Travelers Indemnity Company

2111151.2

Pursuant to Local Civil Rule 56.1(a) and in support of its motion for summary judgment, defendant The Travelers Indemnity Company ("Travelers") submits the following material facts as to which there is no genuine dispute:

1. According to its Complaint, E.M. Sergeant alleges that Travelers issued policies to E.M. Sergeant and Sergeant Chemical Company[1] ("SCC") that were "effective from various dates, including but not limited to, 1943, 1945, 1946, 1947, 1948, 1949, 1950, and 1955 through 1964." (See Complaint, attached as Exhibit A to the Declaration of John Maloney ("Maloney Dec."), at ¶4).

2. E.M. Sergeant also alleges that Columbia Insurance Company issued policies to E.M. Sergeant and SCC, many of which were purportedly in effect during the same periods as the alleged Travelers policies.[2] (Id. at ¶¶4, 25-34).

3. Through this action, E.M. Sergeant seeks insurance coverage under the alleged Travelers policies for property damage caused by environmental pollution arising from real property in Newark, New Jersey formerly owned by E.M. Sergeant (the "Site"). (Id.).

4. E.M. Sergeant occupied the Site from approximately 1942 to 1984 and used it in connection with its business of distributing industrial chemicals and raw materials. (See E.M. Sergeant's responses to Travelers Second Set of Interrogatories, attached (along with Travelers Second Set of Interrogatories) as Exhibit B to the Maloney Dec., at nos. 1 and 3).

---

[1] SCC was a separate and distinct corporation that dissolved in 1981. Because SCC is a dissolved corporation, it lacks the capacity to sue Travelers under New Jersey law. See Global Landfill Agreement Grp. v. 280 Dev. Corp., 992 F. Supp. 692, 695-96 (D.N.J. 1998). Accordingly, SCC's claims were voluntarily dismissed.

[2] Defendant Columbia Insurance Company has not been located or served by E.M. Sergeant and thus is not a party to this matter at this time.

1

21111151.2

5. E.M. Sergeant asserts causes of action for breach of contract and breach of the duty of good faith and fair dealing against Travelers. (Complaint, Ex. A to the Maloney Dec., at ¶¶13-24).

6. All of the persons associated with E.M. Sergeant during the time of the alleged Travelers policies are now deceased. (See E.M. Sergeant's responses to Travelers Second Set of Interrogatories, Ex. B to the Maloney Dec., at no. 11; transcript of the deposition of Albert F. Reisch, Jr., November 15, 2012 ("A. Reisch dep."), attached as Exhibit C to the Maloney Dec., at 33:11-38:23).

7. The broker allegedly responsible for E.M. Sergeant's insurance, William Stake & Company, is long defunct and E.M. Sergeant does not have any information as to the whereabouts of the broker's files or former employees. (See E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, attached (along with Travelers First Set of Requests for Admissions) as Exhibit D to the Maloney Dec., at nos. 39-40).

8. Discovery in this matter has confirmed that E.M. Sergeant cannot meet its burden of proof with respect to the existence, terms and conditions of the alleged Travelers policies. Despite numerous searches, neither E.M. Sergeant nor Travelers has been able to locate or confirm the alleged Travelers policies. Significantly, in its responses to Travelers Requests for Admissions, E.M. Sergeant admits that *it does not have any information or documents referring or relating to the limits of liability or terms and conditions of any insurance policies allegedly issued by Travelers to E.M. Sergeant between 1943 and 1964.* (See E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at nos. 35-36).

21111151.2

9. During his deposition, E.M. Sergeant's executive vice president and corporate designee, Scott Reisch, confirmed that E.M. Sergeant has no information as to the policy limits, terms or conditions of any alleged Travelers policies. (See transcripts of deposition of Scott Reisch, November 15, 2012 and May 2, 2013 ("S. Reisch dep."), attached as Exhibit E to the Maloney Dec., at 63:8-16).

10. E.M. Sergeant's counsel, Daniele Cervino, who was responsible for coordinating E.M. Sergeant's search for historical insurance information, also confirmed that E.M. Sergeant has no information as to either the types of coverage afforded by any alleged Travelers policies or the policy limits, terms or conditions of such alleged policies. (See transcript of deposition of Daniele Cervino, November 15, 2012 ("Cervino dep."), attached as Exhibit F to the Maloney Dec., at 9:3-7, 13:1-10, 39:22-24, 44:9-13).

11. Indeed, both Mr. Reisch and Ms. Cervino further acknowledged that they do not even know if the alleged Travelers policies were primary policies. (S. Reisch dep., Ex. E to the Maloney Dec., at 63:2-7; Cervino dep., Ex. F to the Maloney Dec., at 44:14-18).

12. In addition, E.M. Sergeant admits that it does not have custody or control over any Primary Source Documents[3] that relate or refer to any alleged Travelers policies in effect during 1945, 1946 or 1955-62. (E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at nos. 8-17).

---

[3] "Primary Source Documents" is defined as "any Documents maintained by E.M. Sergeant and/or SCC during the usual course of their business that relate to the business of one or both of these entities and which contemporaneously recorded the events or matters reflected therein." (See Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec.).

3

21111151.2

I. E.M. Sergeant's secondary "evidence" of the alleged Travelers policies

13. In support of its allegation that Travelers issued policies to E.M. Sergeant, E.M. Sergeant relies on just two types of secondary "evidence": (1) a few pages from handwritten ledgers that purportedly reference payments to or refunds from Travelers in 1947-48, 1948-49, 1949-50 and 1963-64, and (2) a handwritten note from an unknown author allegedly obtained from the underwriting file of another insurer, Fireman's Fund Insurance Company ("Fireman's Fund"), which began issuing umbrella policies to E.M. Sergeant in 1964, that states "Travelers previously on line for about 40 years." (See ledger pages and Fireman's Fund underwriting note, attached as Exhibits G-K to the Maloney Dec.).[4]

A. The ledgers

14. E.M. Sergeant admits that the four ledger pages in its possession are the only Primary Source Documents of which it is aware that reference Travelers.[5] (See E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at no. 6; A. Reisch dep., Ex. C to the Maloney Dec., at 51:6-10, 56:21-57:1; S. Reisch dep., Ex. E to the Maloney Dec., at 44:10-16).

---

[4] Travelers does not concede the admissibility of any documents produced by E.M. Sergeant and specifically reserves its right to challenge admissibility on all available grounds.
[5] E.M. Sergeant's admission also references other pages from its document production that are either duplicates or do not reference Travelers at all and are therefore irrelevant. (See E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at no. 6; documents production-stamped 000524, 000542, 000553, 000563, 000564 and 000566, attached as Exhibit L to the Maloney Dec.). The four ledger pages relate exclusively to the periods from 1947 to 1950 and 1963 to 1964.

4

21111151.2

1. Ledger 529

15. The first ledger page relied upon by E.M. Sergeant contains three separate debit entries that refer to Travelers:

(a) November 24, 1948 -- Travelers #62095
W.C. 12/1/48-12/1/49

(b) January 7, 1949 -- Travelers HP81724
1/13/49-1/13/50 Tenants Liability

(c) February 21, 1949 -- Travelers UB2458520
12/1/47-12/1/48 Additional

(See ledger sheet production-stamped 000529 ("Ledger 529"), attached as Exhibit G to the Maloney Dec.).

16. The deposition testimony of E.M. Sergeant's president (since 1975), Albert Reisch, and executive vice president (since the mid-1990s), Scott Reisch, confirms that E.M. Sergeant has no information as to the meaning, if any, of these entries.

17. Significantly, Albert Reisch testified that he did not know whether Ledger 529 related to E.M. Sergeant or SCC – a wholly separate entity. (A. Reisch dep., Ex. C to the Maloney Dec., at 45:11-17; S. Reisch dep., Ex. E to the Maloney Dec., at 18:2-3).

18. Albert Reisch and Scott Reisch both further testified that (i) they did not know what type of insurance might have been afforded by any of the "policies" purportedly referenced on Ledger 529, (A. Reisch dep., Ex. C to the Maloney Dec., at 43:7-10, 45:5-10; S. Reisch dep., Ex. E to the Maloney Dec., at 32:13-16), (ii) they did not know what "W.C.," "Tenants Liability" or "Additional" meant, though Scott Reisch believed that "W.C." stands for "Workers Compensation," (A. Reisch dep., Ex. C to the Maloney Dec., at 42:23-25, 43:22-24, 44:20-22; S. Reisch dep., Ex. E to the Maloney Dec., at 30:3-7, 31:1-4, 32:5-7), and (iii) E.M. Sergeant was

5

not a tenant at the Site. (A. Reisch dep., Ex. C to the Maloney Dec., at 43:3-6; S. Reisch dep., Ex. E to the Maloney Dec., at 31:11-18).

2.   Ledger 554

19.   The second ledger that references Travelers contains two relevant entries, both of which are under the column for credits:

(a)   May 13, 1964    --   Travelers Public Liability
                            KDS 1741699 4/6/64-4/1/65

(b)   June 11, 1964   --   Travelers 12389
                            KDS 822876 4/1/63-4/1/64

(See ledger sheet production-stamped 000554 ("Ledger 554"), attached as Exhibit H to the Maloney Dec.).

20.   Again, E.M. Sergeant's representatives testified that these ledger entries could not be interpreted to provide any meaningful information about any alleged policies. Specifically, Albert and Scott Reisch stated that (i) they have no understanding as to whether Ledger 554 relates to E.M. Sergeant or SCC (and there is no way to tell), (A. Reisch dep., Ex. C to the Maloney Dec., at 46:20-25); (ii) they do not know to what kind of insurance (if any) these ledger entries relate, (id. at 48:13-15; S. Reisch dep., Ex. E to the Maloney Dec., at 41:4-8), and (iii) they have no idea what "Public Liability" means. (A. Reisch dep., Ex. C to the Maloney Dec., at 48:9-13).

3.   Ledger 560

21.   The third ledger page relied upon by E.M. Sergeant contains a single entry that references Travelers:

6

21111151.2

  (a)  August 30, 19[xx][6] -- William Stake (Refund Travelers Ins.
                DS 179924 4/1/63
                  Audit Mfrrs. Liability

(See ledger sheet production-stamped 000560 ("Ledger 560"), attached as Exhibit I to the Maloney Dec.).

  22. Just like the other ledger entries, E.M. Sergeant's principals testified that (i) they do not know to what kind of insurance (if any) these ledger entries might relate, (A. Reisch dep., Ex. C to the Maloney Dec., at 50:11-13), and (ii) they have no understanding as to what "Audit Manufacturers Liability" means, but confirmed that E.M. Sergeant did not manufacture anything. (Id. at 50:7-10, 14-16; S. Reisch dep., Ex. E to the Maloney Dec., at 40:12-41:3).[7]

  23. Daniele Cervino also testified that the reference to "Manufacturers" indicates that the insurance likely related to SCC and not to E.M. Sergeant. (Cervino dep., Ex. F to the Maloney Dec., at 32:20-24).

    4. Ledger 1362

  24. The fourth and final ledger page relied upon by E.M. Sergeant reflects four entries that reference Travelers, the first two of which are debits and the latter two of which are credits:

  (a)  April 16, 1949 -- 4/1/49-4/1/50 Travelers
             DS 330528 (Chlorine)

  (b)  September 22, 1949 -- 4/1/48-4/1/49 audit 79[illegible]
             Travelers DS 2646587 Chlorine

  (c)  January 6, 1949 -- Refund Travelers
             W.C. Policy NJUB2640541
             Cancelled 10/9/48

---

[6] It is not clear from Ledger 560 in what year it was purportedly created. (See Ledger 560, Ex. I to the Maloney Dec.).

[7] Unlike Ledgers 529 and 554, Ledger 560 appears to relate to E.M. Sergeant on its face because it bears a stamp across it that reads "E.M. Sergeant Pulp and Chemical Co., Inc." (See Ledger 560, Ex. I to the Maloney Dec.).

        (d)      August 25, 1950  --  330528 Travelers
                                                                         4/1/49-4/1/50 Refund

(See ledger sheet production-stamped 001362 ("Ledger 1362"), attached as Exhibit J to the Maloney Dec.).

    25.    Scott Reisch again testified that he (i) did not know if Ledger 1362 related to E.M. Sergeant or SCC, though he believed it belonged to SCC, (S. Reisch dep., Ex. E to the Maloney Dec., at 75:24-76:5), (ii) believed that the references to chlorine indicated "a form of insurance against a potential problem with chlorine . . . something very specific to do with that piece of the operation," (id. at 75:19-23, 82:13-16), and (iii) the third entry probably relates to a workers compensation policy. (Id. at 78:17-20).

    26.    In addition, Daniele Cervino testified that the references to "chlorine" likely related to a "special risk policy stand-alone for [SCC's] chlorine operation" and did not relate to E.M. Sergeant. (Cervino dep., Ex. F to the Maloney Dec., at 32:11-24).

        B.    <u>The Fireman's Fund note</u>

    27.    In addition to the four ledger pages, E.M. Sergeant also relies on a handwritten note purportedly obtained from Fireman's Fund that states "Travelers previously on line for about 40 years." (See Fireman's Fund underwriting note, Ex. K to the Maloney Dec.).

    28.    E.M. Sergeant has taken no discovery with respect to the handwritten note, but has confirmed that it did not originate from E.M. Sergeant's files and was not maintained by E.M. Sergeant during the usual course of its business. (S. Reisch dep., Ex. E to the Maloney Dec., at 56:18-24; E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at no. 18). E.M. Sergeant therefore has no basis upon which the note may be admitted into evidence.

21111151.2

29. Moreover, E.M. Sergeant has admitted that it: (i) does not know the identity of the individual who drafted the note, (E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at no. 21), (ii) does not know the basis for the reference to "40 years," (S. Reisch dep., Ex. E to the Maloney Dec., at 57:25-58:3); (iii) does not know what is meant by "on line," (id. at 58:4-9), and (iv) does not know what type of insurance is potentially referenced by the note. (Id. at 58:18-23).[8]

30. Despite this near total lack of understanding of the source or meaning of the note, E.M. Sergeant acknowledges that the Fireman's Fund note is the sole basis upon which E.M. Sergeant alleges that Travelers issued an insurance policy to E.M. Sergeant for the years 1955-59. (E.M. Sergeant's Revised Answers to Travelers First Set of Requests for Admissions, Ex. D to the Maloney Dec., at nos. 27-31).

31. Indeed, given the absence of any Primary Source Documents relating to nearly all of the policy years alleged, the note appears to be the only basis for most of the Travelers policies alleged in E.M. Sergeant's Complaint. (See Complaint, Ex. A to the Maloney Dec.).

II. <u>Travelers policy forms</u>

32. In light of the ledger entries described above, Travelers produced certain policy forms relating to policy prefixes HP, DS, KDS and UB that were in use during the periods of the alleged Travelers policies. (See Travelers policy forms, collectively attached as Exhibit N to the Maloney Dec.).

---

[8] In addition, the Fireman's Fund employee most familiar with this matter has confirmed that she does not know who authored the note or when it was written. Moreover, she confirmed that she has no knowledge as to whether Travelers issued any policies to E.M. Sergeant at any time. (See Affidavit of Jennifer Gilbert, attached as Exhibit M to the Maloney Dec.).

9

21111151.2

33.     Of these, the HP, DS and KDS policy forms are used in policies that potentially provide coverage for property damage and bodily injury and, in some instances, medical payments. (Id.).

34.     The UB policy form relates exclusively to workers compensation. (Id.).

35.     Travelers also produced Robert J. Harris, Second Vice President in Travelers Special Liability Coverage Unit, for deposition concerning the policy forms. Mr. Harris explained during his deposition that policy forms are like "building blocks" from which a policy is constructed. (See transcript of deposition of Robert J. Harris ("Harris dep."), attached as Exhibit O to the Maloney Dec., at 18:25-19:4).

36.     Using another analogy, Mr. Harris further explained that:

> the declarations page . . . functions like an a la carte menu. You have to specifically select the coverages and specifically select the subdivision of the coverages and specifically rate the hazards associated and assign policy limits to get a portion of the policy applicable. . . . What you get in the policy is dependent on which items from the menu you select. And you can select as few as one of them. And then [in] the second instance it depends on how the policy is endorsed.
>
> \*     \*     \*
>
> The form provides you [with] the options from which a specific policy is constructed by choosing the specific coverages and then appropriately endorsing them.

(Id. at 19:8-21, 20:1-4).

37.     However, without a copy of an actual declarations page and policy (such as here), it is impossible to know which items from the menu were selected, such as whether the policy provided coverage for property damage, which (if any) property damage options were selected, whether the policy was limited to certain premises and what endorsements may have been part of the policy. (Id. at 25:14-20, 28:2-5, 29:22-30:3, 35:5-11).

38. Notably, "you can't reverse engineer and get to the declarations pages content. You just have to have the declarations page." (Id. at 39:12-15).

Dated: June 16, 2014

                                 /s/ *John Maloney*
                                 John Maloney
                                 GRAHAM CURTIN
                                 A Professional Association
                                 4 Headquarters Plaza
                                 P.O. Box 1991
                                 Morristown, New Jersey 07962-1991
                                 (973) 292-1700

                                 Attorneys for Defendant
                                 The Travelers Indemnity Company

2111151.2