UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.M. SERGEANT PULP & CHEMICAL CO., INC. and SERGEANT CHEMICAL CO., <br><br>Plaintiffs,<br><br>v.<br><br>THE TRAVELERS INDEMNITY CO. INC. and COLUMBIA INSURANCE CO.,<br><br>Defendants. | Civ. No. 12-1741 (KM) (JBC)<br><br>**AMENDED OPINION** |

Plaintiff E.M. Sergeant Pulp & Chemical Co., Inc. ("EMS") seeks coverage and defense costs for environmental pollution claims pursuant to insurance policies allegedly issued by Travelers Indemnity Company, Inc. ("Travelers") and Columbia Insurance Co. ("Columbia") between 1943 and 1964. Travelers' motion for summary judgment (ECF No. 60) is partially briefed and pending, but stayed. Now before the court is Travelers' motion to strike EMS's opposition to Travelers' motion for summary judgment, to exclude EMS's expert report, and for sanctions (ECF No. 78). For the reasons expressed below, the motion to strike and for sanctions will be denied as presented, but granted in part. Discovery is reopened for the limited purpose of permitting a deposition of EMS's proffered expert, Mr. Booth, and to permit Travelers to proffer its own expert, at its option. Travelers' motion for summary judgment will be administratively terminated, subject to supplementation or refiling to include the results of limited expert discovery. EMS shall pay Travelers the reasonable costs and expenses caused by EMS's nondisclosure and late disclosure of the report of its expert, Mr. Booth. This Amended Opinion is entered, with the consent of all parties, to clarify the time line of substitution of counsel.

1

**Background**

Plaintiff EMS is a distributor of heavy industrial inorganic chemicals and raw materials, including nutraceutical and pharmaceutical products. From 1942 to 1980, EMS owned a piece of real estate in Newark, New Jersey, specifically, 120 Lister Avenue. EMS used the property for a while and then leased it to Sergeant Chemical Company ("SCC"), a separate and now-dissolved entity that was also a distributor of heavy industrial chemicals.

In 2004, EMS was notified by the United States Environmental Protection Agency that it was a Potential Responsible Party with respect to the Lower Passaic River Study Area, which is part of the Diamond Alkali Superfund Site in Newark. (Compl. (ECF No. 1) ¶ 7; EMS's Supplemental Statement of Disputed Material Facts (ECF No. 68-3) p. 3) In February of 2009, EMS was named as a Third-Party Defendant in a lawsuit for property damage caused by environmental pollution from the Newark property. (Compl. ¶¶ 5–6)

EMS conducted a search for historical insurance policies and found ledger references to policies with Travelers that EMS obtained through a now-defunct insurance broker, William Stake & Company. (ECF No. 68-3 ¶ 8) All EMS employees who would have been involved in obtaining or maintaining insurance files from the relevant time period are deceased. EMS also obtained the underwriting file maintained by Fireman's Fund Insurance Company, EMS's excess insurer from 1964 until 1970. The Fireman's file contained a reference to Travelers' having provided coverage to EMS before EMS switched to Insurance Company of North America. (*Id.* ¶¶ 10–12)

After conducting this search, EMS filed claims with Travelers and Columbia for coverage and defense, alleging that the insurance companies had issued policies to EMS and SCC in various years between 1943 and 1964. (Compl. ¶ 4) Both insurance companies denied coverage. (*Id.* ¶¶ 8–10)

**Procedural History**

EMS and SCC filed their complaint against Travelers and Columbia on January 18, 2012 in Superior Court of New Jersey, Bergen County, alleging breach of contract and breach of the implied covenant of good faith and fair

dealing.[1] (ECF No. 1) Travelers removed the action to federal court on March 20, 2012, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (*Id.*) Discovery commenced in June 2012. The original deadline for completion of fact discovery was March 1, 2013. (ECF No. 17) After numerous extensions, then-Magistrate Judge Arleo issued a Scheduling Order on May 14, 2014, setting forth a briefing schedule for summary judgment motions. That Order states that "discovery is closed." (ECF No. 59)

Travelers' motion for summary judgment was filed on June 16, 2014. (ECF No. 60) EMS's opposition was due, pursuant to the May 14, 2014 Scheduling Order, on July 21, 2014. (ECF No. 59) EMS, after obtaining numerous extensions, filed its opposition on September 19, 2014. (ECF No. 68) Included in its opposition papers was a Declaration of Henry R. Booth, dated September 15, 2014. (ECF No. 68-1) Booth's declaration contains proffered expert opinion testimony.

Travelers sought leave to file a motion to strike EMS's opposition. (ECF No. 73) Magistrate Judge Mannion granted leave to file such a motion on November 3, 2014, and tolled Travelers' deadline to file a reply brief in further support of its motion for summary judgment until fourteen days after the resolution of the motion to strike. (ECF Nos. 75, 77).

Travelers filed its motion to strike (and for related relief), which is now before this Court, on November 14, 2014. (ECF No. 78) EMS was to file its response by November 28, 2014, but failed to do so. (ECF Nos. 77, 79) Following EMS's substitution of counsel[2] and a teleconference before

---

[1]    Columbia has never been served or appeared in this action. Additionally, by Consent Order, plaintiff SCC was terminated on May 14, 2012. (ECF No. 11)
[2]    At the time when the opposition to the motion for summary judgment (including the report by Mr. Booth) was filed in September 2014, EMS was represented by Joseph Ferriero of the Law Offices of Joseph A. Ferriero. Travelers filed its motion to strike two months later on November 14, 2014, and Mr. Ferriero failed to file a timely opposition to that motion. On June 5, 2015, Mr. Ferriero was terminated and Mr. Tomaszewski of Golub Isabel & Cervino, P.C. was substituted as counsel of record. (ECF No. 84) EMS, represented by Mr. Tomaszewski, sought leave to file a late opposition to the motion to strike, on the grounds that Mr. Ferriero failed to inform EMS about the motion to strike, likely due to his preoccupation with his criminal trial. (ECF No. 86)

3

Magistrate Judge Clark, EMS was directed to file its opposition by July 20, 2015. (ECF No. 87) EMS filed its opposition on July 10, 2015 (ECF No. 89), and Travelers filed a reply on July 22, 2015 (ECF No. 90).

## DISCUSSION

### A. Legal Standards

Pursuant to Federal Rule of Civil Procedure 26(a)(2),[3] parties must disclose their experts and the contents of those experts' reports within the time frame set by the court. Fed. R. Civ. P. 26(a)(2)(A)–(D). Where a party fails to make the disclosures required under Rule 26(a), Federal Rule of Civil Procedure 37(c)(1) provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995).

The party who has failed to disclose information bears the burden to show that the nondisclosure was substantially justified or is harmless. *D & D Assoc., Inc. v. Bd. of Ed. of N. Plainfield*, 2006 WL 1644742, at *4 (D.N.J. June 8, 2006). "Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997). On the other hand, "[a] failure to disclose is considered harmless 'when there is no prejudice to the party entitled to disclosure.'" *D & D Assoc.*, at * 4 (quoting *Fitz*, 174 F.R.D. at 591).

The Third Circuit has identified four factors to consider in determining whether a non-disclosure warrants exclusion: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2)

---

[3] The Federal Rules of Civil Procedure have been amended effective December 1, 2015. I cite to the version in effect at the time of the parties' conduct, but nothing in the amendments would affect the analysis here.

4

the ability of the party to cure the prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000); *see also Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977) (adding that the important of the excluded testimony should also be considered). Whether to exclude evidence is left to the discretion of the trial court. *See Newman*, 60 F.3d at 156.

The Court may address a violation of discovery rules by additional or alternative means. Travelers seeks the imposition of sanctions under Federal Rule of Civil Procedure 16(f) (which itself incorporates portions of Rule 37(b)). Travelers also cites 28 U.S.C. § 1927 (sanctions for attorney who "multiplies proceedings in any case unreasonably and vexatiously"), and the court's inherent powers.

Rule 16(f) covers, *inter alia*, a party's "fail[ure] to obey a scheduling or other pretrial order":

> (2) *Imposing Fees and Costs*. Instead of, or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2).

Similar language appears in Rule 37(b)(2), which covers, *inter alia*, disobedience to discovery orders or failure to produce a person for examination:

> (C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

### B. Discussion

I first consider whether there has been a violation of the discovery rules, and then discuss the four *Nicholas* factors (somewhat out of order) in order to determine whether the expert report of Mr. Booth should be struck.

### a. Violation of Rules and court orders

Federal Rule of Civil Procedure 26(a)(2) would have required disclosure of any experts and their reports long ago. Counsel for EMS acknowledged at oral argument of this motion that the nondisclosure and late disclosure of Mr. Booth's report violated the Rule.

There is no dispute that EMS, by its former counsel, disclaimed reliance on expert testimony, and that the court's deadline to complete all discovery has passed. Prior counsel's disclosure of the expert, Mr. Booth, and his report, came only in response to Travelers' summary judgment motion. That violated the requirement of disclosure and Travelers' entitlement, post-disclosure, to a deposition of any expert. Fed. R. Civ. P. 26(a)(2), (b)(4)(A).

EMS's former counsel affirmatively represented to the Court and to Travelers that EMS would not seek to offer expert testimony. He did so during a teleconference with then-Magistrate Judge Shwartz in which EMS sought an extension of the fact discovery deadline. Relying on counsel's representation that EMS would not seek to introduce expert testimony, the Court granted the extension in an Order dated March 6, 2013. (ECF No. 32) That Order was more than clear about the consequences of EMS's concession: the Order provided that "if the plaintiff does not notify the Court and the defendant by March 12, 2013 that it seeks to be relieved of the representation that it would not call any expert witnesses, then it will be deemed to have waived the right to call any experts." (*Id.* at 2) No such notification came. In short, then, counsel for EMS obtained an extension of the fact discovery deadline based on the representation that it would not call experts; was warned that this would constitute a waiver of expert testimony; was given a week to notify the Court if it wished to change its mind; and did not so notify the Court.

Nor was that the last word. On August 7, 2013, Magistrate Judge Falk, following a teleconference with the parties, entered an order extending fact discovery and setting deadlines for expert discovery. (ECF. No. 43) By joint letter, Travelers and EMS wrote to the court explaining that expert discovery deadlines were unnecessary and should be omitted from the order because, after Judge Shwartz entered her March 6, 2013 Order, EMS had "subsequently confirmed via email that it will <u>not</u> call any expert witness and had waived its right to do so." (ECF No. 44) On August 9, 2013, Magistrate Judge Falk entered a Consent Order modifying the prior order and stating "in light of E.M. Sergeant's prior waiver of its right to call any expert witnesses (as set forth in this Court's March 6, 2013 order and separately confirmed by plaintiff), expert discovery is unnecessary." (ECF No. 45)

Nevertheless, in its opposition to the summary judgment motion, EMS submitted the Declaration of Mr. Booth. (ECF No. 68-1) Booth is clearly the kind of opinion witness who is required to furnish a report, see Fed. R. Civ. P. 26(a)(2)(B), and his declaration is clearly in the nature of an expert report. Booth is the President of R.M. Fields LP, an independent consulting firm specializing in "insurance archaeology," whose specialty is the reconstruction and auditing of historical liability insurance coverage. (Booth Dec. ¶ 1) He is not a percipient witness to any of the events in question. His declaration contains an expert opinion, arrived at after review of discovery documents supplied to him by EMS.

EMS argues that Mr. Booth's report was necessary, or substantially justified, because it was submitted to rebut quasi-expert testimony relied on by Travelers. EMS is referring to the deposition testimony of Robert J. Harris, an excerpt of which is included in Travelers' summary judgment motion. (ECF No. 60-2 at pp. 131–43) Although EMS repeatedly notes that Harris is a fact witness, EMS also contends that Harris "possesses the type of highly specialized knowledge that could only be possessed by an insurance industry expert" and was "essentially an in-house expert for Travelers." (Opp. at pp. 3–4, 5)

EMS has a small point. Mr. Harris is Second Vice President in Travelers' Special Liability Coverage Unit. He, like Booth, was not a percipient witness to the events in suit, which occurred some 75 years ago. But he was not offered, and did not testify, as an expert. Rather, he was produced as a fact witness in response to EMS's Rule 30(b)(6) deposition notice. Travelers' summary judgment motion attaches excerpts from Harris's deposition, in which he testified based on his knowledge he had gained as a result of his position at Travelers. He answered questions about optional "a la carte" form provisions used in Travelers policies in the 1940s and 1950s. In doing so, he used examples taken from the Travelers files, also attached by Travelers. Harris did not have knowledge of any specific policy that was or was not issued to EMS. Rather, Harris stated, for example, that there would not have been coverage for discharge of chlorine into the Passaic River, under any of the available options used by Travelers in the relevant period.

Harris's deposition excerpts may verge on opinion testimony. I am dubious as to whether this renders Harris an expert witness. At any rate, EMS has not moved to exclude Harris's testimony on that basis. But set that aside.

EMS states that it was only after the disclosure of the Travelers exemplar policy language (which preceded Harris's deposition), and the Harris deposition itself (which occurred on January 28, 2014), that it could have recognized the need for rebuttal expert testimony. (Opp. at p. 1) As of January 28, 2014, however, there was still another year's worth of fact discovery to be taken. At no time during that ensuing year did EMS bring its newly discovered need for an expert to the attention of the court.[4]

---

[4] EMS also argues, in essence, that it should be excused from its initial waiver of expert discovery on or about March 6, 2013, because at that point, it had only been in possession of Travelers's first production of documents for two weeks. (Opp. at pp. 3–4) Whether counsel for EMS *should* have waived expert discovery at that stage is debatable; what is not debatable is that he did. At any rate, EMS confirmed that it would not seek expert discovery in its joint letter submitted to this Court some five months later, on August 8, 2013. (ECF No. 44) EMS makes no effort to explain that second, later waiver. Nor does it explain why it did not seek relief from that waiver at any time until its submission of the Booth declaration was challenged by Travelers.

8

There is no question that EMS, if it planned to rely on expert testimony, was required to disclose that fact, comply with relevant procedures under the Civil Rules, and comply with the Court's scheduling orders. Added to those factors, which would apply to any litigant, I have former counsel's affirmative statement that he did *not* intend to introduce expert testimony.

I do not find EMS's explanations persuasive. EMS's nondisclosure and late disclosure of Mr. Booth's report were not substantially justified, and they violated of Rule 26.

The Court would be justified in simply enforcing prior counsel's waiver of expert testimony and leaving it at that. I am mindful, however, that the Civil Rules are to be construed to do substantial justice and facilitate resolution of cases on the merits. *See generally* Fed. R. Civ. P. 1. This case, moreover, presents difficult and sensitive issues of proof, involving events long ago. Exclusion of Booth's evidence might well be case-dispositive. And it appears that counsel, excusably or not, may not have appreciated the need for an expert until far too late. I therefore proceed to the *Nicholas* factors.

### b. Bad faith or willfulness

I do not find bad faith or willfulness here in the sense of an intent to delay the case or cause unnecessary expenses. But I do find it in another sense. Violation of scheduling orders, when accompanied by unsatisfactory explanations, "may be characterized fairly as willful and bad faith." *Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 592 (D.N.J. 1994). It is undisputed that the court's scheduling orders were not followed. I am not satisfied with EMS's explanations as to why Mr. Booth's report showed up unannounced, and only in an opposition to summary judgment. It is true that current counsel was placed in a bind by what may have been misjudgments by his predecessor. I nevertheless find that EMS's actions here were willful in the sense that former counsel knowingly failed to comply with Rule 26 and did not move for relief from that Rule's requirements or the court's scheduling orders.

### c. Prejudice or Surprise

There can be no doubt that Travelers was surprised by EMS's sudden inclusion of an expert report in its summary judgment papers. EMS's waiver of expert testimony was twice memorialized by the Court, in March 2013 and August 2013. EMS's submission of Mr. Booth's report came thirteen months later, four months after the close of all discovery and indeed after the deadlines for dispositive motions, which had been filed. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719–20 (3d Cir. 1997) (finding prejudice and surprise where expert was disclosed eighteen months after close of discovery, but three weeks before trial, and rejecting argument that opposing party should have anticipated an expert would be called). At the time Mr. Booth's report was provided, Travelers was under a deadline to prepare and file its reply brief. *See Bouder v. Prudential Fin., Inc.*, 2010 WL 2026707, at *3–4 (D.N.J. May 21, 2010). And prejudice, in the sense of delay, inconvenience, and increased expense, is obvious. Travelers' entirely legitimate objection to Mr. Booth's report has, at a minimum, delayed resolution of the summary judgment motion and created the need for additional motion practice. It has also caused Travelers to expend superfluous effort and attorney's fees in the preparation of a summary judgment motion based on the legitimate expectation that it possessed all of the relevant evidence.

### d. Disruption of proceedings

For similar reasons, I find that there has been disruption of court proceedings. As outlined above, the Magistrate Judges assigned to this case managed it on the basis of former counsel's disclaimer of expert testimony. Discovery was closed, and summary judgment motions authorized, in due course. The surprise inclusion of Mr. Booth's report necessitated additional motion practice and led the Magistrate Judge, quite properly, to suspend further briefing on the summary judgment motion, the resolution of which has been delayed. For obvious reasons, there has been no further progress toward trial. The only silver lining, if I may look at it that way, is that the disruption does not come on the brink of a trial date.

### e. Ability to cure prejudice

It is this factor, however—ability to cure the prejudice resulting from the violation—that leads me to select a remedy short of striking Mr. Booth's testimony (or striking EMS's entire opposition to summary judgment, as Travelers requests).

A party's failure to meet scheduling orders and to respond to discovery may deprive the opposing party of information and necessitate the expenditure of costs to force compliance. *See Adams v. Trs. of N.J. Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 873–74 (3d Cir. 1994). EMS contends, however, that any prejudice here could be cured by reopening discovery—in particular, by permitting Travelers to depose Mr. Booth and submit a rebuttal affidavit of Mr. Harris. (Opp. at p. 6)

Although this matter is four years old, it is not on the verge of trial. Any sense of urgency is blunted by the fact that the events in suit occurred in the 1940s, '50s and '60s, some 50 to 75 years ago. If there was a danger of fading memories, loss of evidence, or the like, it came and went long ago. Indeed, it was only the pre-complaint loss of records and the death of all relevant witnesses that gave rise to a dispute about the existence of coverage in the first place. Any prejudice here is related to the litigation process itself.

Under the circumstances, I am persuaded that the prejudice here could be cured by reopening discovery and shifting costs. Travelers must, of course, be permitted to depose Mr. Booth. Travelers will also be authorized to proffer its own expert in rebuttal, should it choose to do so, and EMS will be permitted to depose any such expert.

Based on this additional discovery, Travelers may wish to revise or resubmit its motion for summary judgment. To minimize expense, it may do so in the form of a supplemental submission, incorporating the summary judgment motion that is now pending (which will, in the interim, be administratively terminated without prejudice). EMS's opposition, in any case, will be in the form of a single submission, revised to encompass its entire opposition to Travelers' motion, as refiled or supplemented.

### f.   Shifting of costs and fees

Travelers requests that opposing counsel be sanctioned. That is a discretionary decision for me. The failures here seem to have resulted from the actions of prior counsel. Current counsel now points out that his own response was prompt, once he got past difficulties in accomplishing substitution of counsel. The lapses of former counsel do not warrant an attorney sanction of current counsel, which may be perceived to have an ethical dimension. (I do not sanction prior counsel, who is not before the Court.) It does, however, justify shifting of the costs and fees that resulted from the various lapses identified here. Travelers should not have had to incur them, and EMS is the ultimate beneficiary of the court's leniency; the motion to strike, if granted, might well have doomed its case.

Rules 37(b)(2) and 16(f)(2), in similar language, permit the court to order a party to pay the opposing party's "reasonable expenses – including attorney's fees" caused by noncompliance, unless the noncompliance "was substantially justified or other circumstances make an award of expenses unjust." (*See* p. 5, *supra*.) For the reasons expressed above, the justification for this course of conduct was not substantial; it caused Travelers to incur needless additional expense; and compensation of Travelers is not unjust.

The Court will therefore order that EMS pay the reasonable costs and fees occasioned by the nondisclosure or late disclosure of Mr. Booth's report. Such costs and fees will consist of those that would not have been necessary if EMS had timely signaled its intention to rely on Mr. Booth's testimony.

The shifted expenses will include, at a minimum, amounts expended in bringing and arguing this motion to strike. Travelers shall submit a declaration of such costs within 20 days.

The shifted expenses should also reflect the fact that Travelers will have to revise or resubmit its summary judgment motion. Once the motion has been refiled or supplemented, Travelers may submit a second declaration of costs. That declaration should focus on duplicative work—*i.e.,* work that would not have been done, or expenses that would not have been incurred, if Travelers

had had the benefit of the expert evidence before filing its original summary judgment motion.

The shifted expenses shall not, however, include the cost of a deposition of Booth, or the retention of an opposing expert, which would have occurred anyway.

## CONCLUSION

For the foregoing reasons, Travelers's motion is **DENIED** as presented, but **GRANTED** in part. Discovery will be reopened for the limited purpose of permitting Travelers to depose EMS's proffered expert, Mr. Booth. Travelers may, at its option, retain its own expert. Counsel shall contact the Magistrate Judge to work out a reasonable schedule for that discovery. Travelers' pending motion for summary judgment [ECF 60] is administratively terminated without prejudice. Travelers may refile or revise that motion to include the results of expert discovery. EMS shall pay Travelers its reasonable costs and fees incurred as a result of EMS's nondisclosure or late disclosure of Mr. Booth's expert report. An appropriate order follows.

**NOTICE: All sums will be taxed as costs and payable at the conclusion of the case.**

_____
KEVIN MCNULTY, U.S.D.J.

Date:  December 22, 2015